Argued and submitted September 10, decision of the Court of Appeals reversed; judgment of the circuit court reversed, and case remanded to circuit court for further proceedings December 26, 2003

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## TODD ANTHONY PINE,
*Petitioner on Review.*

(CC 980736296; CA A105917; SC S49611)

82 P3d 130

Monica L. Finch, Deputy Public Defender, Salem, argued the cause for petitioner on review. With her on the petition for review was David E. Groom, Acting Executive Director. With her on the brief on the merits was Peter A. Ozanne, Executive Director.

Brendan C. Dunn, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.**

CARSON, C. J.

---

** Kistler, J., did not participate in the consideration or decision of this case.

## CARSON, C. J.

In this criminal case, we must determine whether a defendant who provides on-the-scene aid to another person committing an assault, but who personally does not cause physical injury to the victim, nonetheless can be convicted of third-degree assault under ORS 163.165(1)(e), set out *post*. A jury convicted defendant under that statute, and the Court of Appeals affirmed by an equally divided court. *State v. Pine*, 181 Or App 105, 45 P3d 151 (2002). We conclude that, to be convicted of third-degree assault under ORS 163.165(1)(e), a defendant's particular conduct must produce the resulting injury to the victim. Because the trial court in this case instructed the jury to the contrary, and because that erroneous instruction prejudiced defendant, we reverse the judgment of the trial court and the decision of the Court of Appeals.

We take the following facts from the record. We have noted certain discrepancies between the parties' respective versions of the facts where those discrepancies are significant to our review. In mid-July 1998, defendant's brother, Wade Pine (Pine), was released from his job at a business called Oak Harbor Freight Lines. In the early morning hours of July 30, 1998, an employee of that business, Stemson, finished his swing shift, walked to his vehicle, and started to drive away. As he did so, he noticed Pine, who he knew from work, parked in a vehicle nearby and defendant, who he knew to be Pine's brother, parked on a motorcycle nearby. Stemson drove by Pine and honked his horn. Pine drove after Stemson and then drove up beside him, yelled at him, and cut him off. After Stemson's vehicle hit the curb, Pine got out of his vehicle, ran up to Stemson, and, according to Stemson, yelled something to Stemson about getting Pine fired. Pine then began to punch Stemson in the face, while Stemson still was in his vehicle. Defendant, meanwhile, had followed Pine on his motorcycle and had parked nearby.

The parties' versions of the facts that followed differ. According to the state's version, after Pine had punched Stemson a number of times, Stemson was able to get out of his vehicle and grab and trip Pine. Stemson then was preparing to kick Pine—purportedly to provide himself with an

opportunity to get away—when defendant went behind Stemson and kicked him in the groin, dropping him on all fours. Pine and defendant then both punched and kicked Stemson in the face, back, and ribs. At that point, an Oak Harbor Freight Lines truck happened to come by, and Stemson was able to get away from Pine and defendant, hail the truck, and leave the scene.

According to defendant, by the time that he had parked his motorcycle and taken off his helmet, he saw Pine under Stemson, unable to move. Defendant went over and pulled Stemson "very hard," "kind of threw him," and "rolled him off" Pine. As Stemson started to back off, the Oak Harbor Freight Lines truck came by, and Stemson left in the truck.

A grand jury indicted Pine and defendant jointly for third-degree assault. At defendant's separate trial, the parties presented their respective versions of the facts. Over defendant's objection, the trial court instructed the jury, as discussed further below, that defendant himself need not have caused physical injury to Stemson to be convicted of third-degree assault under ORS 163.165(1)(e). The jury convicted defendant of third-degree assault, defendant appealed, and, as noted, the Court of Appeals affirmed by an equally divided court. 181 Or App 105. Defendant then petitioned for review, and we allowed the petition.

We begin by setting out the third-degree assault statute and the trial court's instructions. ORS 163.165(1) provides, in part:

"A person commits the crime of assault in the third degree if the person:

"* * * * *

"(e) While being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]"

Consistently with that statute, the trial court instructed the jury, among other things, that the state must have proved beyond a reasonable doubt that defendant had caused physical injury to Stemson and that defendant had been aided by another person actually present. After instructing the jury

further on the elements of the lesser-included offense of fourth-degree assault, the court stated:

> "Two more things about lesser and included offenses. First, let me help you as just a tool to distinguish between the charged offense of Assault in the Third Degree and the lesser and included offense of Assault in the Fourth Degree.
>
> "As I told you, Assault in the Third Degree requires proof that the defendant either caused physical injury while being aided by another who was actually present, *or* aided by another who was actually present—I'm sorry— *aided another who was actually present in causing physical injury.*
>
> "The difference, obviously, between that and Assault in the Fourth Degree is that it simply requires that the defendant intentionally caused physical injury, and there isn't any aiding element that's required."

(Emphasis added.) Defendant excepted to the emphasized part of that instruction, arguing that it was confusing and potentially misstated the law because it stated that defendant could be convicted of third-degree assault even if defendant himself had not caused any physical injury to the victim, but, instead, merely had "aided another" in causing the injury.

■       On review, defendant repeats the argument that he made below, specifically: (1) ORS 163.165(1)(e) requires a defendant to have caused physical injury to the victim; (2) a defendant who "aided" another person who caused physical injury while being actually present, but who did not himself or herself inflict the injury, cannot be convicted of third-degree assault under ORS 163.165(1)(e); and (3) the trial court therefore erred in instructing the jury to the contrary. The state responds that a defendant commits third-degree assault under ORS 163.165(1)(e) when that defendant, while actually present, aids another person who causes physical injury to a victim, even if that defendant personally does not inflict the injury. Alternatively, the state asserts that the aid-and-abet statute, ORS 161.155(2)(b), imposes liability as a principal for third-degree assault upon such a defendant in any event.[1]

---

[1] Defendant allows for the possibility of liability under the aid-and-abet statute; however, he argues that the crime of fourth-degree assault, rather than

The parties' competing contentions require that we construe ORS 163.165(1)(e), beginning with the text and context of that statute. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993) (if court can discern legislature's intent after examining text and context, analysis proceeds no further). Before doing so, we note the parties' agreement that, under the state's version of the facts, defendant unquestionably would be guilty of third-degree assault, because the state's evidence supported the conclusion that defendant personally had inflicted physical injury upon Stemson while being aided by another (Pine) actually present. Ordinarily, in criminal appeals following a conviction, this court reviews the facts in the light most favorable to the state—that is, the party that prevailed at trial. *See, e.g.*, *State v. Barone*, 329 Or 210, 212, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000) (so stating). As explained further below, however, we cannot rely upon the facts most favorable to the state exclusively in this case, because, if the jury instruction was defective in the manner that defendant contends, then the instruction rendered the jury's verdict unreliable.

In that connection, we resolve an issue that arose after briefing, but before oral argument. Within that time frame, the state submitted a memorandum of additional authorities that cited *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003), for the proposition that, because the state's version of the evidence supported defendant's conviction, defendant had not established prejudice by way of any arguably erroneous jury instruction. Defendant's response, among other things, emphasized the differences between civil and criminal proceedings—most notably, the routine use of special verdict forms and interrogatories in civil proceedings contrasted with the statutory requirement for general verdicts in criminal proceedings—and the fact that this court's decision in *Shoup* specifically concerned a civil negligence case and the accompanying statutory standard for reversing verdicts in such cases, ORS 19.415(2). *See Shoup*,

third-degree assault, applies when only two defendants—one assailant and one nonassailant "aider"—were involved in the assault. Because we do not address the state's argument under ORS 161.155(2)(b), *see* 336 Or at 207-08 (so explaining), we also do not address defendant's argument under that statute.

335 Or at 173, 178 (discussing standard set out in ORS 19.415(2); noting that special verdict would have allowed defendant to demonstrate specifications upon which judgment was based, thereby providing record allowing court to determine whether trial court's error was prejudicial); ORS 136.485 (requiring general verdicts in criminal trials).

Although we agree with defendant regarding the significance of the procedural differences between civil and criminal proceedings, we rely upon a more fundamental reason to distinguish *Shoup* from this case. As discussed later in this opinion, if the jury had believed defendant's version of the facts, it nonetheless could have convicted him under the challenged instruction. If, as defendant contends, that instruction incorrectly stated the law, then the jury's guilty verdict effectively would have "convicted" defendant of a crime that the legislature did not enact. *See State v. Bailey*, 115 Or 428, 432, 236 P 1053 (1925) (legislature defines what acts or omissions shall constitute crimes). Consequently, in determining whether the trial court erred in giving its instruction and, if so, whether such error prejudiced defendant, we must consider defendant's factual contention that he personally did not cause physical injury to Stemson. *See generally State v. Boots*, 315 Or 572, 580-81, 848 P2d 76, *cert den*, 510 US 1053 (1993) (demonstrating how jury could have viewed evidence underlying erroneous instruction in more than one way; concluding that instruction therefore resulted in prejudicial error).

The foregoing discussion brings us to the questions of what conduct ORS 163.165(1)(e) prohibits and whether the instruction at issue correctly described that prohibited conduct to the jury at defendant's trial. Turning to the statutory construction issue, ORS 163.165(1)(e) sets out the following elements as one variation of the crime of third-degree assault: (1) intentionally or knowingly; (2) causes physical injury to another; (3) while being aided by another person actually present. The state first argues that, notwithstanding the requirement that a defendant "cause[ ] physical injury to another," a defendant can commit third-degree assault under ORS 163.165(1)(e) if that defendant provides on-the-scene "aid[ ]" as contemplated in the statute, even if he or she personally does not inflict physical injury upon the

victim. Stated differently, the state contends that a defendant who plays the role of the on-the-scene aider, but who does not inflict injury, is equally liable under the statute with the person who actually inflicts the injury; it follows, the state argues, that the challenged instruction was accurate as a matter of law.

We disagree. The plain text of ORS 163.165(1)(e) requires the state to prove, as a distinct element of the crime, that a defendant caused physical injury to the victim. Although incorporation of the word "aided" in the statute likely exposes a defendant who provides on-the-scene aid to *some* form of criminal liability, *see* 336 Or at 203 (discussing aid-and-abet liability under ORS 161.155(2)(b)), it does not circumvent the requirement that a defendant must "cause[ ] physical injury" to violate ORS 163.165(1)(e). Reading the statute to the contrary would require omission of words that the legislature chose to insert. *See* ORS 174.010 (when construing statutes, court cannot omit text that legislature inserted).

The statutory context of ORS 163.165(1)(e)—specifically, the statutory framework for the crime of assault—confirms that reading. Of the 16 variations of assault set out in ORS 163.160 to 163.185, 15 prohibit "caus[ing]" physical injury to another person.[2] ORS 163.160(1)(a), for example, defines one variation of the crime of fourth-degree assault, a Class A misdemeanor, as intentionally, knowingly, or recklessly causing physical injury to another. Other forms of assault build upon that phraseology and escalate the crime of assault to a Class C, B, or A felony, depending upon the presence of additional factors beyond causing physical injury, such as the extent of the injury; the use of a deadly or dangerous weapon; the particular identity of the victim; or, in the case of ORS 163.165(1)(e), the presence of an on-the-scene aider. In short, the common element among all but one form of assault set out in ORS 163.160 to 163.185 is that a person must "cause[ ]" physical injury to another person. The state's

---

[2] Unlike the other variations of criminal assault, ORS 163.165(1)(i) does not require that a defendant cause physical injury. *See* ORS 163.165(1)(i) (person commits third-degree assault if intentionally or knowingly propels dangerous substance at correctional or similar staff member acting in course of official duty or as result of official duties).

argument that defendant need not have caused physical injury to Stemson to be convicted of third-degree assault under ORS 163.165(1)(e) is at odds with that statutory framework.

In response to that reading of ORS 163.165(1)(e), that is, a reading that requires a defendant to "cause[ ] physical injury," the parties focus upon the meaning of the word "causes" in the statute. Defendant contends that ORS 163.165(1)(e) requires that a defendant *personally* have caused physical injury to the victim. The state, by contrast, argues that the word "causes" broadly encompasses any action on a defendant's part that ultimately *contributes* to the victim's physical injury, including providing assistance in the fray—by chasing or holding the victim, or by preventing the victim's escape, for example—in a manner that does not physically injure the victim. Under that reading of the word "causes," the jury instruction at issue on review would have been an accurate, albeit inartful, statement of the law.[3]

■     The dictionary definition of the word "cause[ ]" provides, in part:

> "**1 a :** a person, thing, fact, or condition that brings about an effect or that produces or calls forth a resultant action or state ‹it should be obvious that it is the conditions producing the end effects which must be regarded as the efficient ~*s* of them * * *› ‹trying to find the ~ of the accident› * * * **c :** a good or adequate reason : a sufficient activating factor * * * **3 a :** something that occasions or effects a result : the necessary antecedent of an effect * * *"

*Webster's Third New Int'l Dictionary* 356 (unabridged ed 1993). The foregoing definition could be read to support defendant's more narrow reading of ORS 163.165(1)(e), because it could be said that only the person who personally inflicted physical injury upon the victim "produce[d]" that

---

[3] We note that the precise meaning of the word "causes" in ORS 163.165(1)(e) was not at issue at defendant's trial. However, the question whether ORS 163.165(1)(e) imposed liability upon a defendant who did not inflict physical injury was squarely presented below, thereby sufficiently preserving the general issue respecting the intended operation of the statute. *See Newport Church of the Nazarene v. Hensley*, 335 Or 1, 16, 56 P3d 386 (2002) (so long as party preserves issue respecting meaning of statute, court may ascertain legislative intent in light of particular arguments made for first time on appeal or review).

result. However, other parts of the definition lend support to the state's broad reading of ORS 163.165(1)(e), because a defendant could be said to have "cause[d]" physical injury if the defendant's actions "occasion[ed] or effect[ed]" the injury, or otherwise constituted a "significant activating factor" in producing the injury, even if the defendant's actions did not produce the injury directly.

Notwithstanding the elasticity of its dictionary definition, we must read the word "causes" in ORS 163.165(1)(e) in its proper context, which includes other related statutes. *PGE*, 317 Or at 611. Here, related statutes include those regarding parties to a crime. ORS 161.150 provides:

> "A person is guilty of a crime if it is committed by the person's own conduct *or by the conduct of another for which the person is criminally liable*, or both."

(Emphasis added.) ORS 161.155 provides, in part:

> "A person is criminally liable for the conduct of another person constituting a crime if:
>
> "(1) The person is made criminally liable by the statute defining the crime; or
>
> "(2) *With the intent to promote or facilitate the commission of the crime the person*:
>
> "(a) *Solicits or commands* such other person to commit the crime; or
>
> "(b) *Aids or abets* or agrees or attempts to aid or abet such other person in * * * committing the crime[.]"

(Emphasis added.) The foregoing statutes establish that a person can be found to have committed a crime if (1) that person's conduct met all the elements for the crime at issue, ORS 161.150; (2) the statute defining the crime makes that person criminally liable for the conduct of another person, ORS 161.155(1); *or* (3) if that person, with the requisite intent, contributed to the commission of the crime by either "solicit[ing] or command[ing]," or "aid[ing] or abet[ting]," another person, ORS 161.155(2)(a), (b). *See also* ORS 161.150 (more generally establishing dual bases for criminal liability). That context is both significant and instructive for our purposes here, as explained below.

As discussed, the state reads the word "causes" in ORS 163.165(1)(e) to mean any action on a defendant's part that contributes to the infliction of physical injury upon the victim. However, that broad reading undercuts the alternative form of criminal liability set out in ORS 161.150 and ORS 161.155(2)(a) and (b), because it would impose *direct liability under ORS 163.165(1)(e)* upon a defendant who "solicit[ed] or command[ed]," or "aid[ed] or abet[ted]," another person actually present in committing the assault. Stated differently, a defendant who solicits, commands, aids, or abets the commission of an assault, but who personally does not inflict physical injury upon the victim, would "cause[ ]" the injury under the state's reading of ORS 163.165(1)(e). Such a result would obviate the need for imposition of liability for the conduct of another person, as set out in ORS 161.150 and ORS 161.155(2)(a) and (b). In short, the state's broad reading of the word "causes" in ORS 163.165(1)(e) is inconsistent with the alternative forms of criminal liability set out in ORS 161.150 and ORS 161.155(2)(a) and (b).

Notwithstanding that reading of the foregoing context, the state essentially contends that the legislature did not intend the aid-and-abet statute to apply to multiple, on-the-scene defendants in a third-degree assault. Rather, the state argues, a defendant providing on-the-scene aid who ordinarily would be liable to some degree as an aider or abettor under ORS 161.155(2)(b) is liable as a principal for third-degree assault under ORS 163.165(1)(e).

Even if we accepted that reading of the statutes for purposes of ORS 163.165(1)(e), the remaining assault statutes demonstrate that the state's reading of the word "causes" is unworkable. Specifically, as mentioned above, all but one form of criminal assault require that a defendant "cause[ ]" injury—either physical injury or serious physical injury—to the victim. *See* ORS 163.160 - 163.185 (setting out variations of assault in fourth, third, second, and first degrees). If the state's broad reading of the word "causes" in ORS 163.165(1)(e) were applied to all those forms of assault—and nothing in the Criminal Code suggests that that word does not carry the same meaning throughout the assault statutes—then the legislature's choice to impose an

alternative form of criminal liability upon one who solicits, commands, aids, or abets the commission of *any* form of assault would be meaningless, as explained above.

The state also argues that the common definitions of the words "abet" and "aid"—specifically, to encourage, procure, or assist in the commission of a crime, *Webster's* at 3, 44; *State v. Rosser*, 162 Or 293, 344, 91 P2d 295 (1939) (on merits) (defining statutory phrase "aider and abettor")—bolster its reading of the word "causes" in ORS 163.165(1)(e) because, when a person provides on-the-scene aid to an assault, that person helps to "cause[ ]" any resulting physical injury. In short, the state contends that a defendant must be deemed to have "cause[d]" injury by virtue of providing on-the-scene "aid[ ]," ORS 163.165(1)(e), to another person who inflicted the injury.

We decline to define the word "causes" in ORS 163.165(1)(e) by applying the meaning of the word "aided" in that same statute. *See State v. Guzek*, 322 Or 245, 265, 906 P2d 272 (1995) (when legislature used different terms in related statutes, court presumes that legislature intended different meanings); *State v. Harp*, 299 Or 1, 7 n 7, 697 P2d 548 (1985) (court assumed that different, but similar, terms in same statute had distinct meanings). We therefore reject the state's argument.

As further support for its reading of the word "causes" in ORS 163.165(1)(e), the state points to this court's decision in *State v. Nefstad*, 309 Or 523, 789 P2d 1326 (1990), *cert den*, 516 US 1081 (1996), which concerned ORS 163.095(2)(d), the aggravated felony-murder statute. *See Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996) (context includes case law construing related statutes). Under that statute, felony murder is elevated to aggravated murder if the defendant "*personally* and intentionally" committed the murder. (Emphasis added.) In *Nefstad*, the defendant argued that he could not be found to have killed the victim "personally" because the state had not proved sufficiently that he, and not his codefendant, had inflicted the stab wounds that had resulted in the victim's death. 309 Or at 543. After examining the legislative history of ORS 163.095(2)(d), this court concluded that the legislature had intended to distinguish

between a felony participant who had played an active role in the homicide at issue and one with more peripheral involvement in the underlying felony, such as a getaway driver. 309 Or at 540-41. In rejecting the defendant's argument that the statute did not apply because his actions might not have resulted directly in the death of the victim, the court further stated:

> "To state this contention is to refute it. Joining in the stabbing of a dying victim or restraining the victim so that he cannot avoid the fatal knife thrusts constitutes 'personally' committing the homicide. Thus, in the instant case, even if [the] defendant choked and restrained the victim[,] but did not also stab him, nonetheless [the] defendant 'personally' committed this homicide[,] and he is directly responsible for it."

*Id.* at 543.

Here, the state argues that this court's reasoning in *Nefstad* supports its broad reading of the word "causes" in ORS 163.165(1)(e):

> "* * * [J]ust as the state can prove a defendant personally committed murder by playing an active role in the murder, the state can prove a person 'caused' a physical injury by presenting evidence that the person played an active role in bringing about that injury. Therefore, when a person actively provides on-the-scene aid to an assault committed by multiple persons, the person is directly liable as a principal for the crime of third-degree assault."

The state is correct that, although distinguishable based upon statutory differences,[4] *Nefstad* lends general support to the notion that a criminal statute can impose direct liability upon a defendant who perhaps is not involved to the same extent as a codefendant in inflicting injury (or producing death), depending upon the level of that defendant's involvement in the crime. Further, *Nefstad* demonstrates the possibility of a scenario in which a defendant who did not inflict physical injury directly upon a victim nonetheless

---

[4] As noted, *Nefstad* specifically construed the adverb "personally" in ORS 163.095(2)(d); the verb "causes," which also was part of the statutory scheme at issue in *Nefstad*, *see* ORS 163.005 (criminal homicide requires person to "cause[ ]" death of another human being), did not play any part in the court's decision.

could be said, by virtue of the particular conduct at issue, to have "cause[d]" the injury for purposes of ORS 163.165(1)(e). As in *Nefstad*, it would depend upon the extent of the defendant's involvement in the assault. We reject, however, the state's broad proposition that a defendant who provided on-the-scene "aid[ ]" in an assault *always* can be said to have "cause[d]" the resulting physical injury. As explained above, such a reading of ORS 163.165(1)(e)—in addition to not being compelled by this court's decision in *Nefstad*—is inconsistent with ORS 161.150 and ORS 161.155(2)(a) and (b).

After reviewing the text and context of ORS 163.165(1)(e), we conclude that the fact that a defendant provided on-the-scene aid to another person who inflicted physical injury upon a victim does not, in itself, render the defendant liable for third-degree assault under that statute. Rather, such a defendant either must have inflicted physical injury directly himself or herself, or must have engaged in conduct so extensively intertwined with infliction of the injury that such conduct can be found to have produced the injury. That reading of the word "causes" in ORS 163.165(1)(e) is consistent with both its dictionary definition and the statutory and jurisprudential context in which it appears.

■ Finally, the state alternatively contends that the aid-and-abet statute, ORS 161.155(2)(b), *see* 336 Or at 202-03 (setting out statute), imposed liability for third-degree assault upon defendant as a principal, notwithstanding the fact that he might not have caused physical injury to Stemson under ORS 163.165(1)(e). Although it may be true that, even under defendant's version of the facts, ORS 161.155(2)(b) would have rendered him guilty of third-degree assault as a principal, we conclude that the state has not preserved that argument for review. The record reveals that, although the indictment did not allege any aid-and-abet theory of liability, the state originally requested that the trial court instruct the jury on that theory.[5] The court ultimately

---

[5] In a pretrial filing entitled "State's Requested Instructions," the state requested the uniform criminal jury instructions pertaining to the principal rule of parties to a crime, aid-and-abet liability generally, and liability for probable consequences for an aider and abettor. *See* UCrJI 1050 - 1052 (collectively summarizing ORS 161.155(2)(b)).

did not do so, however. Nothing in the record discloses the court's reason for omitting the state's requested instructions, and the state did not cross-assign that omission as error on appeal. Accordingly, because the jury never was instructed on the theory of aid-and-abet liability under ORS 161.155(2)(b), defendant's conviction for third-degree assault cannot rest upon that theory.[6]

■■ We now turn to the question whether the trial court erroneously instructed the jury under ORS 163.165(1)(e). As briefly noted above, 336 Or at 197, the court first instructed the jury that, to convict defendant of third-degree assault, it must determine that the state had proved beyond a reasonable doubt that defendant had caused physical injury to Stemson, while being aided by another actually present. That instruction, which defendant does not challenge on review, followed the wording of ORS 163.165(1)(e) verbatim. We note that the court did not instruct the jury as to any particular definition of the word "causes," and nothing in the record suggests that the jury understood that word to mean anything other than directly inflicting injury. We further note that, under defendant's version of the facts, defendant's conduct did not rise to the level of extensive involvement to which this court alluded in *Nefstad*, as discussed above, such that the jury could have found that he had caused physical injury to Stemson.

After further instructing the jury on the elements of fourth-degree assault, the trial court also stated:

---

[6] As discussed, the trial court did instruct the jury that defendant could be convicted of third-degree assault under ORS 163.165(1)(e) if he had "aided" another person in causing physical injury. In the context of that statute, the court also instructed the jury that the word "aided" meant "encouraged, procured, advised, or assisted in the commission of the crime." The court further instructed the jury that, to convict defendant of third-degree assault, it must find that he intentionally had caused injury to Stemson.

Those instructions—the first of which we conclude below was erroneous under ORS 163.165(1)(e)—were not sufficient to instruct the jury on aid-and-abet liability under ORS 161.155(2)(b). That is so, because ORS 161.155(2)(b) requires the additional element that the defendant acted "[w]ith the intent to promote or facilitate the commission of the crime." In short, the trial court's "aided" and "intent" instructions under ORS 163.165(1)(e) did not operate as a substitute for proper aid-and-abet instructions sufficient to sustain a conviction under ORS 161.155(2)(b).

"* * * Assault in the Third Degree requires proof that the defendant either caused physical injury while being aided by another who was actually present, *or* aided by another who was actually present—I'm sorry—*aided another who was actually present in causing physical injury.*"

(Emphasis added.) The emphasized part of that supplemental instruction was erroneous, because it told the jury that it could convict defendant of third-degree assault under ORS 163.165(1)(e) if it found that he had "aided another" who had caused physical injury to Stemson. As explained above, that was contrary to ORS 163.165(1)(e), which required the jury, before rendering a guilty verdict, to have found that defendant himself had caused the injury in question (as we have defined the word "causes" in this opinion).[7]

Having concluded that the instruction was error, we now must determine whether that error requires reversal of defendant's conviction. This court recently explained that, under Article VII (Amended), section 3, of the Oregon Constitution,[8] it must affirm the judgment below if there was "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As to errors in jury instructions, this court further has stated:

"For an instruction to constitute reversible error, it must have prejudiced the aggrieved party when the instructions are considered as a whole. * * * This court has held that

---

[7] We further note that, in its supplemental instruction, the trial court misplaced the phrase "actually present." Under the court's understanding of ORS 163.165(1)(e) (which mirrored the state's), a defendant who had provided aid without causing physical injury could be liable under the statute if that defendant had been "actually present" at the time of the assault. The court's instruction, however, stated that it was the *other person* who must have been "actually present," effectively suggesting that defendant need not have been present on the scene, so long as he provided "aid[ ]."

That misstatement is not significant to our analysis here, given our conclusion that the instruction was erroneous in any event. Moreover, in light of the undisputed fact that both Pine and defendant were "actually present" during the assault on Stemson, that misstatement alone would not have prejudiced defendant.

[8] Article VII (Amended), section 3, of the Oregon Constitution provides, in part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

'cases should not be reversed upon instructions, despite technical imperfections, unless the appellate court can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jur[ors] which affected the outcome of the case.' "

*State v. Thompson*, 328 Or 248, 266, 971 P2d 879, *cert den*, 527 US 1042 (1999) (quoting *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970)).

Here, the trial court's supplemental instruction created an erroneous impression of the law that, if the jury had believed defendant's version of the facts, would have affected the outcome of the case. That is so, because the jury could have convicted defendant of third-degree assault under the instruction even if it found that he had not caused physical injury to Stemson, as we have defined the word "causes" in ORS 163.165(1)(e) in this opinion. *See generally State v. Hill*, 298 Or 270, 280, 692 P2d 100 (1984) (court reversed third-degree assault conviction when jury incorrectly instructed on *mens rea* element, because erroneous instruction may have led jury to convict upon finding of lesser culpability than statute required). We therefore must reverse defendant's conviction for third-degree assault under ORS 163.165(1)(e).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.