Argued and submitted January 31, reversed and remanded August 13, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## VICTOR MERIDA-MEDINA,
*Defendant-Appellant.*

Washington County Circuit Court
C040970CR; A128340

191 P3d 708

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Brendan C. Dunn, Assistant Attorney General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

A jury convicted defendant of assault in the third degree under ORS 163.165(1)(e), which makes it an offense to intentionally or knowingly cause physical injury to another "[w]hile being aided by another person actually present." On appeal, defendant makes two assignments of error. In the first, he argues that the trial court erred in instructing the jury that it could find him guilty under the principles of aiding and abetting liability. In his second assignment of error, defendant argues that the court erred in failing to instruct the jury that at least 10 of its members had to agree on whether he was guilty as a principal assailant or by aiding and abetting another assailant. We do not reach the second assignment of error, because we conclude that the trial court erred in instructing the jury on aiding and abetting liability.

A detailed discussion of the facts is not necessary. The evidence in the record is such that the jurors could have found defendant guilty on one of two theories: (1) defendant personally assaulted the victim while being aided by another man, Esquivel-Merida, who was present and also assaulted the victim, or (2) defendant aided and abetted Esquivel-Merida's assault of the victim. Defendant argues that the trial court erred in instructing the jury that it could find him guilty on the second theory. The question before us is whether the court's instruction on aiding and abetting was legally correct—that is, whether, in an assault in which the assailant is aided by another person who is actually present, the aiding person can be found guilty of third-degree assault as an accomplice.

In support of his position that the aiding person is not an accomplice to third-degree assault, defendant relies on ORS 161.165(2). That statute provides that a person is not criminally liable for the conduct of another constituting a crime if the crime "is so defined that the conduct of the person is necessarily incidental thereto." Defendant contends that, as third-degree assault is defined in ORS 163.165(1)(e), the conduct of the aiding person is "necessarily incidental" to the crime because it cannot be committed unless the assailant is "being aided by another person actually present." He thus

argues that, under ORS 161.165(2), the aiding person is not criminally liable for the conduct of the principal assailant.

The state responds that defendant reads ORS 161.165(2) too broadly. In the state's view, that provision is designed to ensure that certain "victim-like" persons and persons who do not actively seek to participate in a crime are not treated as accomplices merely because they take some action that necessarily must occur when another person commits a crime.

The parties' arguments call into question the meaning of ORS 161.165(2). To determine its meaning, we look to the statutory text in context and, if necessary, to legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with the text. ORS 161.165 provides:

> "Except as otherwise provided by the statute defining the crime, a person is not criminally liable for conduct of another constituting a crime if:
>
> "(1) The person is a victim of that crime; or
>
> "(2) The crime is so defined that the conduct of the person is necessarily incidental thereto."

The parties' disagreement centers on what it means for conduct to be "necessarily incidental" to the crime. Defendant reads ORS 161.165(2) to exempt a person from criminal liability for the conduct of another if the person's conduct is a necessary part of the crime—in other words, if it is included in the definition of the crime. The state contends that the statute applies only to "victim-like" persons and those who do not actively seek to participate in a crime. Without belaboring the point, we conclude that both proposed constructions are plausible. Nothing in the context suggests that either one is implausible, so we turn to the legislative history, which is dispositive.

■ ORS 161.165 was enacted as part of the 1971 revision of the criminal code. Or Laws 1971, ch 743, § 15. The commentary to the Criminal Law Revision Commission first explains that ORS 161.165(1) provides that the *victim* of a crime is not liable for the conduct of the perpetrator even though, in some instances, the crime cannot occur without

the victim acting in some way. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 15, 14 (July 1970). For example, the victim of a blackmail plot "aids" the commission of the crime by paying over money, and a child under the age of consent may "solicit" statutory rape. The commentary goes on to explain that ORS 161.165(2) "extends the same concept to situations wherein the person may not be characterized exactly as a 'victim.' " *Id.* It quotes extensively from the commentary to the Model Penal Code to explain the issue and the resolution that ORS 161.165(2) was intended to effect:

> " 'Exclusion of the victim does not wholly meet the problems that arise. Should a woman be deemed an accomplice when an abortion is performed upon her? Should the man who has intercourse with a prostitute be viewed as an accomplice in the act of prostitution, the purchaser an accomplice in the unlawful sale, the unmarried party to a bigamous marriage an accomplice of the bigamist, the bribe-giver an accomplice of the taker?

> " 'These are typical situations where conflicting policies and strategies, or both, are involved in determining whether the normal principles of accessorial accountability ought to apply. One factor that has weighed with some state courts is that affirming liability makes applicable the requirement that testimony be corroborated; the consequence may be to diminish rather than enhance the law's effectiveness by making any convictions unduly difficult. More than this, however, is involved. In situations like prostitution, prohibition, even abortion, there is an ambivalence in public attitudes that makes enforcement very difficult at best; if liability is pressed to its logical extent, public support may be wholly lost. Yet to trust only to the discretion of prosecutors makes for anarchial diversity and enlists sympathy for those against whom prosecution may be launched.

> " 'To seek a systematic legislative resolution of these issues seems a hopeless effort; the problem must be faced and weighed as it arises in each situation. What is common to these cases is, however, that the question is before the legislature when it defines the individual offense involved. No one can draft a prohibition of adultery without awareness that two parties to the conduct necessarily will be involved. It is proposed, therefore, that *in such cases the*

*general section on complicity be made inapplicable, leaving
to the definition of the crime itself the selective judgment
that must be made.* If legislators know that buyers will not
be viewed as accomplices in sales unless the statute indi-
cates that this behavior is included in the prohibition, they
will focus on the problem as they frame the definition of the
crime. And since the exception is confined to behavior 'inev-
itably incident to' the commission of the crime, the problem,
we repeat, inescapably presents itself in defining the
crime.' "

*Id.* at 15 (quoting Model Penal Code, Tentative Draft No. 1
§ 2.06(6), comment at 35-36 (1953)) (emphasis added). The
commentary thus demonstrates that criminal liability does
not turn on a judicial determination of whether a person is
"victim-like" or how actively the person sought to participate
in the crime, as the state asserts. Rather, where a crime nec-
essarily involves conduct by multiple parties, the determina-
tion of who is criminally liable is made by the legislature in
defining the crime, and the general rules of complicity—that
is, liability for the conduct of another, as defined in ORS
161.155—do not apply.[1]

■     As noted above, ORS 163.165(1)(e) provides that a
person commits third-degree assault if he or she causes phys-
ical injury to another "[w]hile being aided by another person
actually present." Because the aid of "another person" is nec-
essary for the crime to occur, under ORS 161.165(2), the
"other" person is not deemed to be an accomplice in the third-
degree assault.[2] It follows that the trial court erred in

---

[1] Thus, for example, neither party to a prostitution transaction is charged
under an aiding and abetting theory. Instead, ORS 167.007(1) defines prostitution
so that both parties to the transaction are directly criminally liable:

"A person commits the crime of prostitution if:

"(a) The person engages in or offers or agrees to engage in sexual conduct
or sexual contact in return for a fee; or

"(b) The person pays or offers or agrees to pay a fee to engage in sexual
conduct or sexual contact."

Similarly, ORS 162.015 and ORS 162.025 make both parties to bribery directly
criminally liable by separately proscribing "bribe giving" and "bribe receiving." *See
also* ORS 163.515 (making both parties to a bigamous marriage directly criminally
liable).

[2] Nor is the "other" person directly liable for third-degree assault if he or she
did not personally injure the victim. In *State v. Pine*, 336 Or 194, 207, 82 P3d 130
(2003), the Supreme Court held that, as third-degree assault is defined in ORS

instructing the jury that it could find defendant guilty of third-degree assault by aiding and abetting Esquivel-Merida. Because the jury might have found defendant guilty on a legally erroneous theory, defendant's conviction must be reversed and the case must be remanded.

■　The question remains as to what should occur on remand. Defendant concedes that, at a minimum, the jury found him guilty of aiding and abetting an intentional infliction of physical injury—that is, an assault in the fourth degree. He contends that we should remand for entry of a conviction for fourth-degree assault. The state contends that, on remand, the prosecutor should be permitted to elect to reprosecute defendant for third-degree assault or, in the alternative, to agree to entry of a conviction for fourth-degree assault. We agree with the state. As noted above, the jury did not necessarily find defendant guilty based on accomplice liability; it may have found that he personally assaulted the victim while being aided by Esquivel-Merida—that is, that he directly committed third-degree assault. The state should not be deprived of the opportunity to try him again for that offense.

Reversed and remanded.

---

163.165(1)(e), only a person who personally causes physical injury is liable—that is, a person who merely aids an assault is generally not liable under that statute. The court's analysis focused on the proper construction of the word "causes." In concluding that a person who merely aids an assault does not "cause" physical injury, the court relied on two observations: (1) that the word "causes" has the same meaning throughout the assault statutes, and (2) that ORS 161.150 and ORS 161.155 create an alternative form of criminal liability—accomplice liability—for contributing to the commission of a crime by, among other things, aiding and abetting the person who commits it. The court reasoned that, if the word "causes," as used in ORS 163.165(1)(e), were understood to include the conduct of the aiding person, the same would be true of all of the assault statutes, and, consequently, "the legislature's choice to impose an alternative form of criminal liability upon one who solicits, commands, aids, or abets the commission of *any* form of assault would be meaningless" throughout the assault statutes, a result that the court found implausible. 336 Or at 204-05 (emphasis in original).

The court did not consider in *Pine* whether the aiding person can be liable for third-degree assault on an aiding and abetting theory, because the trial court had not instructed the jury on aiding and abetting. *Id.* at 207-08. Thus, the court did not address the implications of ORS 161.165(2).