Submitted July 28, 2009, conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed March 24, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRYAN ALLEN FRY,
*Defendant-Appellant.*

Linn County Circuit Court
06092050; A135842

228 P3d 630

Peter Gartlan, Chief Defender, Appellate Division, and David Ferry, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General, filed the brief for respondent.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

BREWER, C. J.

Rosenblum, P. J., dissenting.

**BREWER, C. J.**

Defendant was convicted of three counts of third-degree assault, ORS 163.165, and one count of first-degree burglary, ORS 164.225. On appeal, he raises two assignments of error. First, he argues, the trial court erred in denying his motion for a mistrial when the prosecutor asked a witness (defendant's mother) whether she had reported to a deputy sheriff that defendant had admitted committing the crimes. Because we conclude that the trial court did not abuse its discretion in choosing to give a curative instruction rather than grant a mistrial, we reject that assignment of error without further discussion. In his second assignment of error, defendant argues that the trial court erred in denying his motion for a judgment of acquittal on one of the third-degree assault charges. We agree with defendant that the state did not introduce sufficient evidence from which a rational trier of fact could have found each of the elements of that charge beyond a reasonable doubt. Accordingly, as explained below, we reverse defendant's conviction on Count 1, remand for resentencing, and otherwise affirm.

> "When reviewing a challenge to the sufficiency of evidence, we examine the record and all reasonable inferences that may be drawn from it in the light most favorable to the state to determine whether a rational factfinder could have found all the elements of the offense beyond a reasonable doubt."

*State v. Lawrence*, 231 Or App 1, 3, 217 P3d 1084 (2009), *rev den*, 347 Or 533 (2010). We summarize the facts consistently with that standard. One summer night in 2006, David Thayer was at home with his son, his brother, Doug, and his friends, Will Fletcher and Lucy Barton. Lucy previously had dated a man named Allan Plagmann, and she had at least one telephone conversation with him that evening. Apparently pursuant to that conversation, Allan Plagman, Daisy Plagmann, Michael Plagmann, and Allan's girlfriend arrived at David Thayer's house. Words were exchanged, an argument ensued, and mace was sprayed. Nonetheless, the visitors left after Allan Plagmann shook hands with David Thayer.

At about 1:30 the following morning, Fletcher was in front of the house, searching for Barton's sandal that had been lost during the earlier encounter. Fletcher testified that, while he was searching for the sandal, he heard the crunching of gravel, "like somebody running behind me up the driveway." He turned around and saw someone running toward him with a rock raised in the person's hands; the person struck Fletcher with the rock. Fletcher testified that he saw "other people further off behind" his assailant. When he was struck, Fletcher fell to the ground. He lost his glasses at that time; without them, he cannot see more than five feet away. He was then struck several times in the face and back; he could not say whether he was hit with an object or with fists. At first, he tried covering his head, but then he just lay still for 10-15 minutes. During that time, he heard people go into the Thayer house, and he could hear voices and screaming. He did not know how many people entered the Thayer house. Fletcher suffered a "nightstick fracture" to his left forearm, an "orbital blowout fracture" (around the eye), and bruising.

After the attack on Fletcher, defendant and two young men (Alford and Sheahan) pushed their way into the Thayer house, despite the Thayers' efforts to hold the front door closed. The two other men pushed the Thayers into the bedroom, with defendant right behind them. The assailants punched and kicked the Thayer brothers many times, mostly in the head. The beating lasted for five to ten minutes before the assailants left the house.

A few minutes later, the original intruders reentered the house, joined this time by the Plagmann brothers. The attackers at that point began hitting the Thayer brothers; they "[j]ust started the whole process over again." The second attack lasted about three to five minutes, before the assailants again left the house. Both Thayer brothers suffered injuries, the house was damaged, and items were taken.

Defendant was charged with several counts of assault, burglary, and robbery. Only Count 1 of the indictment—alleging third-degree assault on Fletcher—is relevant here. In that count, the state alleged that the "defendant, on or about August 26, 2006, in Linn County, Oregon, did unlawfully and intentionally cause physical injury to

William Fletcher while aided by another person actually present[.]" Defendant was tried jointly with two of the other assailants. At the close of the state's case, all three defendants moved for judgments of acquittal on Count 1. Counsel for one of the codefendants argued that "[t]here's absolutely no evidence as to the identity of the individual who assaulted Mr. Fletcher. Mr. Fletcher was unable to identify anybody." Defendant's counsel noted that "there was no description of who the assailant was by Mr. Fletcher." The trial court denied the motions. The defendants all renewed their motions for judgments of acquittal at the close of their cases; the trial court again denied them.

The trial court instructed the jury that it must find that defendant "intentionally caused physical injury to William Fletcher" and that he was "aided by another person actually present." The trial court expanded on the latter phrase:

> "Aided by another person actually present, with respect to Assault in the Third Degree, means that the Defendant must have inflicted physical injury directly himself or must have engaged in conduct so extensively intertwined with the infliction of the injury, that such conduct can be found to have produced the injury."

Defendant was convicted of the crimes noted above.

On appeal, defendant argues that the state did not introduce sufficient evidence from which a rational trier of fact could find that he was the one who attacked Fletcher. He emphasizes that Fletcher did not identify his attacker, that he did not describe any participation by the people he perceived as "further off," and that he did not describe anything else about the other people, such as their proximity to the attack. Defendant notes that Fletcher did testify that the people went into the Thayer house after he was attacked, and David Thayer identified defendant as one of the people who pushed into the house and attacked him. But, defendant insists that,

> "[f]rom that evidence, one might be able to infer that defendant was present during Fletcher's assault and that defendant went into the house. However, one cannot infer that defendant was *the* person who struck Fletcher. Picking one

person out of three, without any evidence to indicate which should be picked, is pure speculation. Speculation is insufficient to support a conviction."

(Emphasis in original.)

The state responds by emphasizing the evidence regarding the subsequent assaults on the Thayer brothers. "Contextually," the state argues, "the larger picture of the evidence demonstrates a concerted effort to beat down persons at the Thayer[s'] house." The state points to David Thayer's description of what Alford said when the assailants broke through the front door: "First they told me to—I need to get on my bed and that they just messed my friend up outside." The state asserts that that statement—which was made, not by defendant, but by Alford, one of the other assailants—was an adoptive admission on defendant's part, "one that furthered a conspiracy to beat down the residents." Finally, the state appears to rely on Thayer's use of the third person in describing Alford's statement—"*they* just messed my friend up outside"—to support an inference that more than one person beat Fletcher and that defendant was one of them.[1]

■ There are a number of ways to commit third-degree assault. Defendant was charged under ORS 163.165(1)(e), which provides that a person commits third-degree assault if, "[w]hile being aided by another person actually present, [the person] intentionally or knowingly causes physical injury to another[.]" As noted, the trial court instructed the jurors that they could not convict defendant unless they found that he "inflicted physical injury directly himself or must have engaged in conduct so extensively intertwined with the infliction of the injury, that such conduct can be found to have produced the injury." *See State v. Pine*, 336 Or 194, 207, 82 P3d 130 (2003) (Under ORS 163.165(1)(e), "a defendant either must have inflicted physical injury directly himself or herself, or must have engaged in conduct so extensively intertwined with infliction of the injury that such conduct can be

---

[1] Of course, the use of "they" as a singular pronoun is, despite the teeth-gnashing of traditional grammarians, becoming widespread. *See, e.g.,* Bryan A. Garner, *A Dictionary of Modern American Usage* 529 (1998) ("*[T]hey* has increasingly moved toward singular senses. * * * Disturbing though these developments may be to purists, they're irreversible. And nothing that a grammarian says will change them.").

found to have produced the injury."); *see also State v. Merida-Medina*, 221 Or App 614, 191 P3d 708 (2008), *rev den*, 345 Or 690 (2009) (ORS 163.165(1)(e) does not impose liability on person who aids and abets, but does not actively participate in infliction of the injury.).

With that understanding of what the statute requires, we turn to the record in this case. The state concedes that "a defendant who has been convicted of an assault based on the theory of being actually present and aiding in the assault must do more than stand by while one participant harms another." But, it asserts, "jurors could have found that defendant either inflicted physical injury directly upon Fletcher, or engaged in conduct so 'extensively intertwined with' the actions of the rock-wielder such that Fletcher's injuries were attributable to both actors." The state asserts that (1) based on the number and location of Fletcher's injuries, jurors could have inferred that the blows came from different directions after Fletcher hit the ground; (2) because of the number of blows and Fletcher's proximity to the front door of Thayer's house, jurors could have inferred that the beating of Fletcher was not completed until the arrival of the three people—including defendant—who burst down the front door; and (3) jurors could infer that the "concerted assaults by defendant and others within the home merely replicated" what another assailant told David Thayer had just occurred outside.

We disagree. The only evidence in the record is that some unidentified assailant (or assailants) attacked Fletcher while some undisclosed number of people were "further off." It is true, as the state asserts, that the jurors reasonably could have inferred from the fact that defendant entered Thayer's house shortly after Fletcher's assault that he was present during Fletcher's assault. But, as explained above, that is not enough. Rather, under *Pine*, the state was required to prove, beyond a reasonable doubt, that defendant intentionally or knowingly inflicted physical injury directly, or engaged in conduct so extensively intertwined with the infliction of the injury that such conduct could be found to have produced the injury to Fletcher. It was not sufficient for the state to introduce evidence from which the jurors could have inferred that defendant was merely present—that is, "further off"—at Fletcher's beating. Viewing the facts

adduced at trial in the light most favorable to the state and applying all inferences that reasonably can be drawn from them, *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995), we conclude that the state did not prove beyond a reasonable doubt that defendant committed third-degree assault against Fletcher.

The dissent disagrees, focusing—as does the state—on David Thayer's use of the word "they," to describe Alford's statement as the assailants burst into the house.[2] But, as explained above, the most the jurors could infer from that statement—even assuming that they took "they" to mean more than one person—is that Alford and someone else had beaten Fletcher. But Fletcher never testified that there was more than one assailant; he affirmatively stated that he could not identify his attackers, and he testified without contradiction that, at least when the beating began, some people were standing "further off."

As the dissent notes, it is permissible to infer from Thayer's testimony that Alford said "we." "We" would definitely implicate Alford himself in the attack on Fletcher, and it also would allow an inference that at least one other person participated in the assault. But even if Alford said, "we just messed up" Fletcher, that phrase contains no information as to the identity of who the other assailant or assailants were. In short, even if Alford said "we," that was insufficient to create a jury question as to whom he was referring other than to himself.

■ Thus, despite the lack of direct evidence, the jury could have inferred that Fletcher was beaten by more than one person. But, because at least two people other than Alford were involved in the series of attacks on the Thayers, it would be mere speculation, rather than a reasonable inference, to find from David Thayer's testimony that defendant

---

[2] We emphasize that the state and the dissent place far too much weight on Thayer's use of the word "they." Thayer testified, "First they told me to—I need to get on my bed and that they just messed my friend up outside." In response to the prosecutor's questioning, Thayer testified that only Alford made that statement and that neither Sheahan nor defendant said anything. It follows that, when Thayer said, "they told me * * * that they just messed my friend up outside," he was referring only to Alford. Thayer most likely was using "they" in the colloquial, singular sense.

was one of the people who personally was involved in Fletcher's beating. "The distinction is critical: Reasonable inferences from circumstantial evidence are permissible; speculation and guesswork are not." *State v. Bilsborrow*, 230 Or App 413, 418, 215 P3d 914 (2009); *see also State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) ("The line is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts." (Internal quotation marks and citation omitted.)).

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

**ROSENBLUM, J.,** dissenting.

The majority concludes that there is no evidence to support the jury's finding that defendant personally inflicted injury on the victim or engaged in conduct so extensively intertwined with the infliction of the injuries that his conduct effectively produced the injuries. I respectfully disagree. Viewed in the light most favorable to the state, with all reasonable inferences drawn in the state's favor, the evidence shows that the victim was beaten by multiple assailants outside David Thayer's home. The victim testified that he was initially struck by a person wielding a rock and that other people were "further off behind" the assailant. The victim did not testify about how many people ultimately assaulted him. That is perhaps unsurprising, given that, when he was struck with the rock, he fell to the ground, lost his glasses, and tried to cover his head; he may not have known how many assailants there were. However, after he fell, he was struck several times in the face and back and suffered fractures to his forearm and around his eye as well as bruising. The number and location of the victim's injuries support the inference that other people joined in assaulting him after the first blow was struck with the rock.

The evidence also shows that, immediately after the victim was beaten, defendant, Kelcy Alford, and Calvin Sheahan forced their way into the house and beat Thayer and his brother. Thayer testified that, when the three men

burst into the house, Alford ordered him to get on his bed and told him what had happened outside. Specifically, Thayer testified, "First they told me to—I need to get on my bed and that they just messed my friend up outside."

As the majority acknowledges, it is reasonable to infer that what Alford said was, "We just messed your friend up outside." The majority dismisses the significance of that inference, however, as leading only to speculation that defendant had participated in the assault on the victim outside. According to the majority, the word "we" was "insufficient to create a jury question as to whom [Alford] was referring other than himself." 234 Or App at 380. In other words, in the majority's view, because Alford could have been referring to only himself and Sheahan, it is speculative to infer that he meant all three men.

To be sure, it would have been permissible for the jury to infer that Alford meant that only he and Sheahan had beaten the victim. But that is not the only, or even the most likely, inference that can be drawn. When three men burst into a house and one of them tells the occupants, "We just messed your friend up outside," the most natural understanding of that statement is that all three men "messed up" the friend outside—particularly when all three men then proceed to beat two other people in the house.

A jury does not engage in speculation when it chooses between two reasonable, competing inferences: If the evidence supports multiple reasonable inferences, "which inference to draw is for the jury to decide." *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004). " 'If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.' " *Id.* (quoting *Tose v. First Pennsylvania Bank, N.A.*, 648 F2d 879, 895 (3rd Cir), *cert den*, 454 US 893 (1981)). There is a logical probability that, when Alford said, "We just messed your friend up outside," he meant that he and the two men with him had assaulted the victim. It follows that there is sufficient evidence to support defendant's conviction. Accordingly, I respectfully dissent.