Submitted on remand from the Oregon Supreme Court February 14, on appeal, convictions for felony murder (Counts 5 and 6) and robbery (Count 8) reversed and remanded; remanded for resentencing; otherwise affirmed; cross-appeal dismissed as moot August 15, 2012

## STATE OF OREGON,
*Plaintiff-Respondent*
*Cross-Appellant,*

*v.*

## VICTOR MANUEL PEREZ-CHI,
*Defendant-Appellant*
*Cross-Respondent.*

Clackamas County Circuit Court
CR0500103; A137433

284 P3d 1195

Peter Gartlan, Chief Defender, and Kristin Carveth, Deputy Public Defender, Office of Public Defense Services, for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, Ryan Kahn, Assistant Attorney General, Timothy A. Sylwester, Assistant Attorney General, and Denis M. Vannier, Assistant Attorney General, for respondent.

Before Wollheim, Presiding Judge, and Brewer, Judge, and Schuman, Judge.

BREWER, J.

**BREWER, J.**

This case is before us on the Supreme Court's remand of our prior decision, *State v. Perez-Chi*, 241 Or App 344, 255 P3d 497 (2011), *vac'd*, 351 Or 403 (2011), for reconsideration in light of *State v. Lopez-Minjarez*, 350 Or 576, 260 P3d 439 (2011). In our prior decision, we reversed and remanded defendant's convictions for felony murder and robbery because the trial court had given the jury the "natural and probable consequences" jury instruction that we had held to be legally erroneous in *State v. Lopez-Minjarez*, 236 Or App 270, 286-87, 237 P3d 223, *modified on recons*, 237 Or App 688, 240 P3d 753 (2010), *aff'd in part*, *rev'd in part*, 350 Or 576, 260 P3d 439 (2011). *Perez-Chi*, 241 Or App at 345. On reconsideration in light of the Supreme Court's overriding analysis in *Lopez-Minjarez*, we adhere to our prior disposition and again reverse and remand defendant's convictions for felony murder and robbery. In adhering to our prior disposition, we affirm defendant's remaining convictions, remand for resentencing, and dismiss the state's cross-appeal as moot.

In *Lopez-Minjarez*, the defendant had been convicted of burglary, kidnapping, second-degree assault, aggravated murder, and two counts of felony murder for which the predicate felonies were burglary and kidnapping. 350 Or at 579. The defendant's testimony established that he participated, along with his father, in the burglary, kidnapping, and assault of the victim, but the defendant claimed that he had not participated in his father's act of murdering the victim. *Id.* at 580-81. The defendant claimed that he had been in the bathroom of a McDonald's restaurant when his father drove the victim to a remote location and shot him. *Id.* at 581. The state's theory was that it did not matter who had murdered the victim, because the defendant was sufficiently involved to be criminally responsible for the resulting crimes. *Id.* at 580.

The trial court instructed the jury that

"[a] person who aids and abets another in committing a crime *** is also criminally responsible for any act or other crime that [was] committed as a natural and probable consequence of the planning, preparation, or commission of the intended crime."

*Id.* at 582.

The Supreme Court began its analysis by agreeing with this court that the "natural and probable consequences" jury instruction was an affirmative misstatement of the law. *Id.* at 583; *see also* 236 Or App at 282. The court then went on to determine that the trial court's error in giving that instruction was harmless with respect to the defendant's burglary conviction, because that conviction was chronologically "first in time":

> "Said another way, in this case, the jury could not have found the burglary to have been a natural and probable consequence of an earlier crime that defendant had aided in committing, because there was no earlier crime in the sequence of charged criminal acts."

*Id.* at 586. The court then concluded that the instruction had not been harmless with respect to the defendant's conviction for assault, but that it was harmless with regard to his conviction for kidnapping, because the defendant "conceded his direct participation in that crime." *Id.* at 587. The court also concluded that the instruction was not harmless with respect to the defendant's conviction for aggravated murder. *Id.* at 588.

The court then turned to the defendant's convictions for felony murder, and it concluded that the erroneous instruction had prejudiced the defendant with respect to those convictions. As the court explained:

> "In this case, defendant was charged with two counts of felony murder based on defendant or his father having caused the victim's death in the course of and in furtherance of, respectively, defendant's commission of first-degree burglary and first-degree kidnapping. As we have described, the erroneous instruction did not affect defendant's convictions on those charges. Having found defendant guilty of burglary and kidnapping, the evidence would have permitted the jury to further find that a participant in those underlying felonies (either defendant or his father) caused the victim's death in the course of and in furtherance of the underlying felonies. If the jury did so find, defendant was guilty of felony murder, and the jury's verdicts on felony murder would be consistent with Oregon law.
>
> "* * * * *

"But the fact that the jury could have convicted defendant of felony murder on a proper legal theory, given these facts, is not a complete answer to the harmless error issue. The question remains whether the jury also could have convicted defendant of felony murder on a legally incorrect theory, pursuant to the erroneous natural and probable consequences instruction. We conclude, as did the Court of Appeals, that the jury could have done so.

"As noted, felony murder requires the jury to find that a participant in one of several specified felonies caused the victim's death *** 'in the course of and in furtherance of the crime that the person was committing or attempting to commit[.]' ORS 163.115(1)(b). The requirement that the homicide be in the course and furtherance of the predicate felony is a familiar concept from the common-law crime of felony murder.

"* * * * *

"Whether the felony was completed, terminated, or withdrawn from—any of which can be sufficient to break the causal connection between the felony and the homicide—generally depends on whether the homicide is incidental to the felony or part of a continuing sequence of events. *** That determination ordinarily is a question of fact for the jury.

"* * * * *

"Here, if the jury believed defendant's testimony, the jury could have found that defendant's participation in the predicate felony offenses (burglary and kidnapping) ended when defendant got out of the truck at McDonald's and his father drove away with the victim. In effect, defendant could have been found to have withdrawn from the felony in a way sufficient to break, at least for his direct responsibility for felony murder, the series of otherwise continuous events that culminated in the victim's death. Under a correct understanding of the law, the jury, if it so concluded, then would have acquitted defendant on the felony murder charges.

"The erroneous instruction, however, could have led the jury to nevertheless find defendant guilty by concluding that, although defendant did not commit felony murder because he withdrew from the underlying felony, his father independently continued the felony and committed

the victim's murder in the course of it, thus committing felony murder. The jury could have further concluded that the father's felony murder was the natural and probable consequence of defendant's earlier participation in the felonies, for which the jury had found defendant responsible either as a principal or an accomplice. The jury, using the erroneous instruction, then could have found defendant criminally responsible for the felony murder that his father committed. If the jury reasoned through the felony murder charges in that way—which it could have on this record— the jury's verdict would be based on a legally incorrect theory. The erroneous instruction was therefore prejudicial to defendant on the felony murder convictions."

*Id.* at 588-91 (internal citations omitted).

In this case, defendant was convicted of burglary, robbery, and two counts of felony murder. On remand, neither party contests our prior conclusion that giving the challenged instruction was harmless with regard to defendant's conviction for burglary. That conclusion is consistent with the Supreme Court's analysis in *Lopez-Minjarez* because, here, the burglary was "first in time" in the sequence of charged criminal acts. *See* 350 Or at 586. Accordingly, we adhere to our prior disposition of that conviction. Neither have the parties disputed the effect of giving the erroneous instruction on defendant's conviction for robbery. We adhere to our prior conclusion that giving the erroneous instruction was not harmless as to that conviction. The robbery occurred after the burglary in the sequence of charged criminal conduct and, unlike in *Lopez-Minjarez*, defendant's testimony here did not unequivocally concede his direct participation in the robbery.

Instead, the parties have focused their arguments on whether there is sufficient evidence in the record from which the jury could have found that defendant "withdrew" from the crimes of robbery and burglary underlying his felony murder convictions before his codefendant killed the victim. In the state's view, the record is not susceptible to such an inference; defendant contends otherwise.

We will reverse a conviction if an incorrect jury instruction "created an erroneous impression of the law

that, if the jury had believed defendant's version of the facts, would have affected the outcome of the case." *State v. Pine*, 336 Or 194, 210, 82 P3d 130 (2003). Thus, to assess whether giving the erroneous instruction was harmless with respect to the felony murder convictions, we must determine whether the jury's guilty verdicts on those charges could have been based on the theory of criminal responsibility contained in the instruction. *Lopez-Minjarez*, 350 Or at 585.

The relevant facts were hotly contested at trial, but to determine whether the error in instructing the jury could have affected the jury's verdict on the particular charges at issue here, we describe defendant's evidence and theory of the case. Defendant and his codefendant, Absalon Pechcanul, entered the victim's home and went to the victim's bedroom, where Pechcanul began searching for money. Defendant had known the victim for years and testified that he considered him a friend. Defendant testified that, after they entered the bedroom, he asked Pechcanul what he was doing, and Pechcanul answered: "None of your business." According to defendant, Pechcanul began asking defendant about money and he had replied "I don't know" more than once. During that interaction, Pechcanul noticed the victim sitting up in his bed. Defendant testified that, at that point, "I turned. I was turning to leave the room." As defendant was doing so, he heard Pechcanul tell the victim, "I told you." Defendant turned around and saw Pechcanul pointing a gun at the victim.

Defendant testified that he had not known that Pechcanul had a gun until that moment. When he saw the gun, defendant testified that he "started walking" toward Pechcanul, because "I thought he was going to hurt my friend," the victim. As defendant was walking toward him, Pechcanul shot the victim. Defendant fell to the floor next to the victim's bed, and Pechcanul proceeded to shoot the victim again; the victim's body fell from the bed onto defendant as he lay on the floor. Defendant testified that, as the victim was being shot, the victim said "help me Victor. Absalon shot me." Defendant then saw Pechcanul pointing the gun at him. Defendant "just turned around. I was shaking and just walk[ed] out of the room."

The completion of, or the withdrawal from, the underlying felony are both sufficient to break the chain of causation required to convict a defendant for felony murder. *Lopez-Minjarez*, 350 Or at 590. Although the jury was not required to believe defendant's testimony, based on that testimony, the jury could have found that defendant had withdrawn from the robbery before Pechcanul shot the victim. Although defendant ultimately did not leave the room, according to his testimony, he turned back only after the victim awoke, at which point Pechcanul pulled out his gun. Based on defendant's testimony, the jury also could have found that the burglary—which was charged as an entry with intent to commit theft—was complete before Pechcanul shot the victim. Accordingly, although it is possible that the jury convicted defendant under a correct understanding of the law, it nevertheless could have found that the murder was committed not "in the course of and in furtherance of" the burglary and robbery, but, instead, was the "natural and probable consequence" of those crimes.

On appeal, convictions for felony murder (Counts 5 and 6) and robbery (Count 8) reversed and remanded; remanded for resentencing; otherwise affirmed. Cross-appeal dismissed as moot.