230 P.3d 973 (2010)
235 Or. App. 315
In the Matter of K.C.W.R., a Youth.
STATE ex rel JUVENILE DEPARTMENT OF DOUGLAS COUNTY, Respondent,
v.
K.C.W.R., Appellant.
0500295; A139566.
Court of Appeals of Oregon.
Argued and Submitted February 22, 2010.
Decided May 12, 2010.
*974 Christa Obold-Eshleman argued the cause and filed the brief for appellant.
Jamie Contreras, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.
Before WOLLHEIM, Presiding Judge, ROSENBLUM, Judge, and SERCOMBE, Judge.
ROSENBLUM, J.
Youth appeals a judgment of the juvenile court finding him to be within the juvenile court's jurisdiction for committing acts that, if committed by an adult, would constitute third-degree assault pursuant to ORS 163.165(1)(e).[1] We write only to address a portion of youth's first assignment of error: that the juvenile court erred in finding youth to be within its jurisdiction for third-degree assault, because the state failed to prove beyond a reasonable doubt that youth caused physical injury to the victim-or that, if he did so, he was aided by another person actually present.[2] We affirm.
On de novo review, ORS 19.415(3) (2007), the record establishes the following relevant facts. Late in the evening on April 22, 2006, youth and his family travelled to a bar in Yoncalla. Youth's brother had been involved in a fight at the bar earlier that evening, and the family went to the bar to confront the person with whom youth's brother had fought. Youth's mother brought two bats with her to the bar, one of which was a small bat described as a "thumper."
Ultimately, youth and his family became involved in a fight outside of the bar. The victim and several other bar patrons left the bar to see what was going on outside. As the victim walked out of the bar, youth's sister punched him. As the victim turned toward youth's sister, youth punched him. The victim grabbed youth, they both fell to the ground where they wrestled, and the victim held youth down. The victim repeatedly let youth up and tried to turn toward his other attackers, but "every time [he'd] let [youth] off the ground * * * [he] would get attacked from [youth] again." At the same time, as the victim and youth were on the ground together, youth's mother was hitting the victim in the face with the small bat from one side while a third unidentified person punched the victim from his other side. (The identity of the third assailant, who was punching the victim while youth's mother hit him with the bat and while youth wrestled with him on the ground, is unclear.) The victim testified that his injuries were caused by four blows to his face from the bat. He testified that every time the bat hit him, he saw a "flash[]," and that the punches "weren't as strong[.]"
The victim sustained injuries to his elbow, nose, eye, and eyebrowwhich required stitches. He testified that he experienced "enormous pain" from the bat hitting his face. Youth told the investigating officer that he had hit one person, split that person's eyebrow open, and then "there was a scuffle for a while."[3] At trial, one of the state's theories was that youth had directly caused the victim's injuries and that youth's mother *975 was the person actually present and aiding during the assault.[4] Youth responded that, even if he was the youth seen fighting on the ground and even if he was not acting in self-defense, the state had failed to prove that he had caused any injury to the victim. The juvenile court made the following relevant findings before finding youth to be within its jurisdiction for third-degree assault:
"[F]rom the testimony that I have heard there was no reason for [youth] to hit [the victim] to begin with. * * *
"And [the victim] describes taking him to the ground. That [the victim] holds him to the ground and then I can't tell you was a couple if not more than that, that he tries letting him up. That is[,] are we done fighting and the guy, that is [youth], continues on the fight. * * *
"And so then you look at were there injuries caused, who caused the injuries[,] and who's responsible for the injuries. One is responsible for the acts of their aider, the person they're aiding and abetting, and especially when they're involved in, that is[,] the individual that is charged is involved in the assault and not just a bystander or that they're an active participant in it.
"And that's the testimony that I have thus far or in this trial, is that [youth] is involved. * * *. He was aided by another person present. That's clear from the testimony.
"That [the victim] was hit by at least two other individuals, one of which was a bat-wielding lady * * * that has been identified as * * * [youth's] mother.
"So I am finding that the allegations of Assault in the Third Degree, Count 1, have been proven."
On appeal, youth argues that he cannot be found to be directly liable for third-degree assault because there is insufficient evidence either (1) that he caused the victim's injuries or (2) that, if he did cause the victim's injuries, he was aided by another person actually present when he did so.
The state responds that the evidence established that youth directly caused the victim's injuries with his fists, or is liable as an assailant whose assaultive conduct was so intertwined with his mother's assault with the bat that both of them had a legally sufficient role in causing the victim's injuries. See generally State v. Pine, 336 Or. 194, 207, 82 P.3d 130 (2003) (concluding that a defendant who aids another person in committing an assault, but who does not directly cause physical injury to the victim, cannot be convicted of this type of third-degree assault under a theory of direct liability unless he or she engages in conduct so "extensively intertwined" with the assault that his or her conduct can be said to have produced the injury). In Pine, the defendant participated in an assault on the victim, but the injury to the victim was, at least arguably, caused solely by the other assailant's assault. Id. at 196-98, 82 P.3d 130. The Supreme Court stated that
"the fact that a defendant provided on-the-scene aid to another person who inflicted physical injury upon a victim does not, in itself, render the defendant liable for third-degree assault under that statute. Rather, such a defendant either must have inflicted physical injury directly himself or herself, or must have engaged in conduct so extensively intertwined with infliction of the injury that such conduct can be found to have produced the injury."
Id. at 207, 82 P.3d 130.[5]
Youth's conduct here is comparable to the assaultive conduct of the defendant in State v. Derry, 200 Or.App. 587, 116 P.3d 248, rev. *976 den., 340 Or. 34, 129 P.3d 183 (2005), even though the assault in that case did not require an additional person to be present. In Derry, the defendant repeatedly shoved the victim during an altercation near a doorway. In the course of that altercation, the victim's finger was injured when the door was closed on his hand. Id. at 589, 116 P.3d 248. We concluded that "[the] defendant's conduct in repeatedly pushing [the victim] during the altercation was so intertwined with infliction of the injury to [the victim's] finger that it produced that injury." Id. at 592, 116 P.3d 248.
We conclude that youth's assaultive conduct was extensively intertwined with the mother's injury-causing assault with the bat, such that he is directly liable for the injuries to the victim. It is apparent from the record that the blows from the mother's bat injured the victim. Although youth did not directly assault the victim with the bat, the victim could not even try to stop the mother from assaulting him because, while the mother was hitting him, whenever he would attempt to let go of youth, youth would attack him. Without youth's active involvement in the assault by the mother, the victim would likely have been able to block or defend himself against her assault-or to retreat. It follows that youth intentionally injured the victim while being aided by his mother, who was actually present, and is therefore directly liable for third-degree assault. The juvenile court did not err in finding youth to be within its jurisdiction for third-degree assault.
Affirmed.
NOTES
[1] ORS 163.165(1)(e) provides that a person commits the crime of third-degree assault if the person, "[w]hile being aided by another person actually present, intentionally or knowingly causes physical injury to another[.]"
[2] We reject youth's second assignment of error without discussion, and similarly reject youth's other arguments in support of his first assignment of error.
[3] The victim was the only person involved in the fight who suffered an injured eyebrow. Thus, it would seem that the evidence established that youth directly caused at least one of the victim's injuries when he punched him after youth's sister's punch and before youth's mother began swinging the bat at the victim. However, because youth was charged with third-degree assault, which requires that youth be "aided by another person present," and the state does not argue that youth's sister was "the other person," we analyze the facts of this case under the theory of "extensive intertwinement," focusing instead on youth's later conduct in attacking the victim, with his mother as the "aider." See 235 Or.App. at 318-19, 230 P.3d at 975.
[4] The state also argued, alternatively, that youth aided his mother's assault. In response to that argument, youth argued that there was insufficient evidence that his conductbeing held to the ground by the victimaided his mother in hitting the victim in the head with the bat.
[5] The court distinguished the defendant's conduct from that of the defendant in State v. Nefstad, 309 Or. 523, 789 P.2d 1326 (1990), cert. den., 516 U.S. 1081, 116 S.Ct. 793, 133 L.Ed.2d 742 (1996). In Nefstad, the defendant was found to be "personally" involved in a homicide even though he argued that he had merely restrained the victim while another individual stabbed him. The court concluded that "restraining the victim so that he cannot avoid the fatal knife thrusts constitutes `personally' committing the homicide." Id. at 543, 789 P.2d 1326.