Argued and submitted July 27, 1981; resubmitted in banc
February 4, affirmed February 8, reconsideration denied April 8,
petition for review denied May 4, 1982 (293 Or 104)

# STATE OF OREGON,
*Respondent,*

*v.*

# GREGORY LEWIS DENNISON,
*Appellant.*

## (No. 80-8-99, CA 18904)

640 P2d 669

Vernon L. Richards, Sandy, argued the cause for appellant. With him on the brief was Richards & Crook, Sandy.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Al J. Laue, Assistant Attorney General, Salem.

GILLETTE, J.

Van Hoomissen, J., dissenting.

## GILLETTE, J.

Defendant appeals from an order declaring him to be an habitual traffic offender. ORS 484.705(1)(a). He contends that the state failed to comply with the notice requirements of ORS 484.715[1] and that the giving of such a notice by the state is a condition precedent to a determination that he is an habitual traffic offender. He further argues that he was denied both his right to counsel and his right to trial by jury. We affirm.

When defendant appeared in response to the District Attorney's habitual traffic offender complaint,[2] he entered into a colloquy with the trial judge which indicated that he did not understand the purpose of his appearance. The trial judge finally said,

"Why don't you go to a lawyer. I'm just the judge, I can't advise you. Go to a lawyer and have him straighten this out. I can't sit here and be your lawyer."

The court expressed an intention to set the matter over for three weeks, but the deputy district attorney then intervened and gave defendant a short, verbal synopsis of the habitual traffic offender law. Defendant then acknowledged that he had been convicted of three major traffic infractions in the past five years, which is one of the grounds for revocation of a license pursuant to ORS 484.705(1)(a). The court then entered an order finding defendant to be an habitual traffic offender. This appeal followed.

None of the contentions now advanced by defendant was urged in the trial court.

---

[1] ORS 484.715 provides:

"When the division receives an abstract of the conviction or bail forfeiture, under ORS 484.240, and the conviction or bail forfeiture is the second one of those described by paragraph (a) of subsection (1) of ORS 484.705 for the convicted person, the division immediately shall notify the licensee and offer him an opportunity of an advisory meeting with a representative of the division in the county wherein the licensee resides. At such a meeting, the division shall advise the licensee of the provisions of ORS 484.700 to 484.750 and of the availability of education programs for driver improvement."

[2] The record contains neither proof of service on defendant nor any other explanation as to how defendant knew he was to appear. We note, however, that defendant did appear on the date set on the summons — August 18, 1980.

"* * * [I]t is only in rare cases that this court will notice an alleged erroneous ruling of the trial court to which no exception was taken or objection made by the appellant. From a very early date the rule has been that it is not error only, but error legally excepted to, which afford grounds for reversal. The rule applies in criminal as well as civil cases." *State v. Avent,* 209 Or 181, 183, 302 P2d 549 (1956).

The familiar rule is applicable in this case.

■ That would settle the matter, were it not for the dissent's apparent insistence that this case falls within a very narrow exception to the "no reversal except for preserved error" rule. (We say "apparent," because the dissent never does set out a clear legal basis for ruling the way it wishes to rule.) The law is that we require that an objection be made at trial before the matter will be considered on appeal. None was made here but, the dissent apparently believes, certain of our precedents indicate that under one argument that defendant makes here, *i.e.,* that there is no evidence to support the trial judge's finding, no exception was necessary.

■ Defendant's lack of evidence claim is not concerned with the substantive question of whether he has been convicted of at least three major traffic offenses. Rather, he claims that there is no proof that the state followed the *procedural* steps required by the habitual traffic offender statute prior to charging him. At trial, the state offered no evidence it had complied with the notice requirements of ORS 484.715. In *State v. Wells,* 27 Or App 537, 556 P2d 727 (1976), we held that the giving of the notice required by ORS 484.715 is a condition precedent to the court's authority to declare a person an habitual traffic offender. In *State v. Carlile,* 31 Or App 1065, 1069, 572 P2d 629 (1977), we held that notice must be sent by registered mail, addressee only, return receipt requested. Even though the state need not allege compliance with the notice requirement in its complaint, it must prove at trial it gave the notice. *State ex rel MVD v. Conforth,* 52 Or App 617, 620, 628 P2d 781 (1981). The dissent apparently views this omitted proof as justifying invocation of the "no evidence of guilt" exception.

■ Our previous cases do not support the dissent's position. The first is *State v. Willy,* 36 Or App 853, 585 P2d 762 (1978). In *Willy,* we were asked to reverse in part the defendant's conviction for a series of charges in connection with the unlawful use of food stamps on the ground that there was no evidence to support her conviction. We said,

> "Defendant acknowledges that this contention [that there was no evidence to support her conviction] was not advanced in the trial court, and that normally this court will not first take cognizance of matters not called to the attention of the trial court. *See State v. Frye,* 2 Or App 192, 465 P2d 736 (1970). Because, however, the allegation is that there was absolutely no evidence from which the defendant could have been convicted, we consider the issue presented by the defendant. * * * " 36 Or App at 856-57.

The language in *Willy* was concerned with a far narrower set of circumstances than those existing here. The missing evidence in the present case is evidence that the state followed a procedural step prior to charging the defendant. The state is required to prove that it took that procedural step, but there could exist a variety of reasons for its failure to produce that evidence, including an agreement with defendant off the record that it was unnecessary to provide such evidence.[3] In any event, the substance of the charge against defendant was not that he had received a procedural notice, but that he was an habitual traffic offender. The absence of proof under these circumstances is the equivalent of absence of proof of venue in a case in which the defendant was charged with murder. We might very well consider an unpreserved claim in the murder case that there was no evidence the defendant committed the homicide, but we would not give any consideration to a claim that there had been no proof of venue, absent some showing that objection on the venue point had been made at trial.

Our limited view of the effect of the opinion in *Willy* appears in a later opinion, *State v. Lindsey,* 45 Or App 607, 609 P2d 386 (1980), where we said, at p 609, n 1:

---

[3] Contrary to the dissent's view, we do not suggest that our agreement was the basis *in this case*. We merely note that there can be reasons for the omission of such evidence aside from its unavailability.

"In *State v. Willy,* \* \* \*, one of defendant's claims of error was that there was absolutely no evidence to support the verdict rendered by the court. Defendant conceded that that contention was not raised at trial. We noted that normally appellate courts will not review matters which have not been called to the attention of the trial court. \* \* \* We then said: 'Because, however, the allegation is that there was absolutely no evidence from which the defendant could have been convicted, we consider the issue presented by the defendant.' 36 Or App at 857.

"The language from *Willy* should not be used as establishing any general rule that we will *always* consider challenges to the sufficiency of the evidence when such challenges were not raised in the trial court. The rule is that we may consider such assignments in our discretion. *Willy* was a case in which we exercised that discretion." (Emphasis in original.)

In *Lindsey,* we took an action consistent with *Willy* in that we considered a claim that there was no evidence to support a verdict. In fact, in *Willy* we held that there was some evidence to support the verdict, so the quoted matter from *Willy* is, strictly speaking, *dictum.* In *Lindsey,* by contrast, we found that there was no evidence to support defendant's conviction for assault in the fourth degree. However, we took that step on the basis of the *state's concession* that there was no evidence to support the verdict. Thus, *Lindsey* was again decided on the theory that a defendant ought not be convicted if there was no evidence of the substantive elements of the offense. *Lindsey* and *Willy* represent a very narrow exception to a general rule, and we decline the dissent's invitation to expand the exception.

Affirmed.

**VAN HOOMISSEN,** dissenting.

The record in this case satisfies me that on the afternoon defendant appeared in circuit court he had not the foggiest notion why he was there or what was happening to him. Under the circumstances, defendant was denied procedural due process. *Floyd v. Motor Vehicles Div.,* 27 Or App 41, 44, 554 P2d 1024, *rev den* 276 Or 873 (1976).[1] I

---

[1] In *Floyd v. Motor Vehicles Div.,* 27 Or App 41, 44, 554 P2d 1024, *rev den* 276 Or 873 (1976), we said that

would therefore vacate the trial court's order and remand for further proceedings.

Defendant appeared in court without counsel. What transpired thereafter speaks for itself:

"THE COURT: State of Oregon, plaintiff, versus Gregory Lewis Dennison, 80-8-99. * * *

"Now, you know why you are here?

"THE DEFENDANT: Not really.

"* * * * *

"THE COURT: What violations are you relying on?

"[PROSECUTOR]: Your Honor, we are relying on a conviction on March 18, 1976, under the influence of intoxicants; conviction on February 8, 1978, two driving while suspended; conviction —

"THE COURT: Let's see, say that again. In February of '78 two convictions?

"[PROSECUTOR]: Yes, there are two entries of convictions on that day.

"THE COURT: I see 1-23-78 and then 3-6-78.

"[PROSECUTOR]: Can I submit to the Court what I'm referring to as outlined in the sheet?

"THE COURT: I think that is probably different from mine.

"January 11, January 23rd — yes, this is the same. So you are relying on the conviction in '76 for DUIL, and the driving while suspended, two of them, in '78?

---

"[r]egardless of whether denominated as a right or a privilege, an operator's license is an important entitlement which can only be suspended or revoked in a manner consistent with procedural due process. * * *"

While the trial court offered defendant an opportunity to contact counsel, I would hold that under the circumstances, he did not waive that right.

An habitual traffic offender case is a civil proceeding. *State v. Wright*, 34 Or App 663, 579 P2d 266 (1978). ORS 484.730 does not specifically recognize a right to jury trial in such cases. The implied consent law, ORS 487.805 *et seq.*, does provide for a jury trial. ORS 482.560(1). Inasmuch as the penalty under the habitual offenders act is substantially more severe than that under the implied consent law, it would seem logical to conclude that a person charged with being an habitual offender might have a right to a jury trial. *See* Art I, § 20, Oregon Constitution, which provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

"[PROSECUTOR]: That's correct. One driving while suspended, May of '78 in addition to a driving while suspended on November 29, 1978.

"You have to show at least three, Your Honor, and that would show five.

"THE COURT: What about the one there in April, April 28, conviction, of '78?

"[PROSECUTOR]: That is not a major traffic offense, Your Honor. It's improper lane use, which is an infraction and not a major traffic —

"THE COURT: Doesn't that say — I see. Well, the 4-28-78 DWS, isn't that driving while suspended?

"[PROSECUTOR]: Yes, DWS.

"THE COURT: That is the one you are relying on, one of them?

"[PROSECUTOR]: I'm relying on four driving while suspended convictions, who [sic] of which are entered of record on February 8, 1978, and one of May 26, 1979. The last one on November 29, 1978; those in addition to the one DUIL in March of 1976.

"THE COURT: All right. What do you have to say about that, Mr. Dennison?

"THE DEFENDANT: Well, I don't know — I don't know what is going on yet. I don't even know why I'm still here. I have no tickets. The last time I had a driving while suspended ticket was twenty-two months ago. I don't understand. All of a sudden I'm here and I haven't —

"THE COURT: The State computer records these and whenever you —

"THE DEFENDANT: I see a computer error. When I got the DUIL, that was in '75. That is why my license was reinstated without having proof of SR 22 in Salem, I think."

At that stage in the proceeding the trial court appropriately determined that a continuance should be ordered to allow defendant to obtain counsel.

"THE COURT: All right. I'm going to continue this for three weeks from today at 9 o'clock in the morning. You get it ironed out or else all I can do is follow the law.

"THE DEFENDANT: I still don't understand.

"THE COURT: You better find out; that will be a good project for you.

"THE DEFENDANT: How am I going to find out without nobody tell me?

"THE COURT: You will have to go to the Director of the Motor Vehicle Department and find out what this is.

"THE DEFENDANT: He said you are bringing me here and —

"THE COURT: I'm not bringing you in here. All I'm doing is sitting here and looking at this. The law says when this shows up, the State has to verify this to the district attorney. The district attorney —

"THE DEFENDANT: Why should they, it's in '78.

"THE COURT: How do I know? I don't ask them questions like this, I just look at the record.

"THE DEFENDANT: I —

"THE COURT: That's all I'm going to tell you. I'll give you to three weeks from today to get it straightened out. If not, you'll forfeit your license.

"THE DEFENDANT: I've got my license.

"THE COURT: All right, turn it in now. Then —

"THE DEFENDANT: I don't even understand why I'm here or anything.

"THE COURT: I told you I'm giving you three weeks to figure it out. Do you want three weeks or —

"THE DEFENDANT: I don't understand what I have to do, to dig it out.

"THE COURT: Do you have your license with you?

"THE DEFENDANT: No, I don't have it with me. What am I going —

"THE COURT: Why don't you go to a lawyer. I'm just the judge, I can't advise you. Go to a lawyer and have him straighten this out. I can't sit here and be your lawyer. You understand that? You understand that, don't you?"

Defendant made no response.

If defendant had comprehended the gravity of the proceedings against him[2] or the procedural and substantive burdens imposed upon the state in such cases,[3] he no doubt would have accepted the trial court's offer of a continuance so that he could contact a lawyer. However, it is obvious that he did not comprehend, and so the prosecutor tried to explain to him what was going on.

[2] ORS 484.735 provides that, with certain exceptions, a license to operate motor vehicles shall not be issued to an habitual offender for a period of ten years.

[3] See, e.g., ORS 484.715.

"[PROSECUTOR]: Your Honor, if I may, just for the defendant's sake. This is a civil hearing by which, if you agree that you have been convicted of three major traffic offenses within the last five years, would declare you to be an habitual offender under the law. And the Court is now giving you three weeks in order to see an attorney to either admit that you have been convicted of three major offenses within the last five years, either to admit that on the record, or to contest that. And he has given you three weeks to see an attorney.

"THE DEFENDANT: Oh."

What transpired thereafter is additional evidence defendant did not understand why he was in court and what was involved in the proceeding:

"THE COURT: Is that so complicated?

"THE DEFENDANT: I don't have to wait for an attorney, I know I have three major convictions.

"THE COURT: All right then, if you have had three major convictions that is why you are here. Can't you read your papers? That's what they say, that's why you're here. You have had three major convictions?

"THE DEFENDANT: Uh-huh. I can see that on here.

"THE COURT: Well then, what are you arguing about?

"THE DEFENDANT: I still don't understand."

The trial court then attempted to explain the Habitual Traffic Offenders Act, ORS 484.700 *et seq.*, to defendant:

"THE COURT: Under the law, if you have had three major convictions, you are brought into court and your license is forfeited. And you are an habitual offender and you are suspended for a period of ten years. You realize that?

"THE DEFENDANT: Ten years?

"THE COURT: And I have no discretion. All I do is declare you are an habitual offender and you are automatically suspended for ten years. You can get probationary type driving privileges.

"THE DEFENDANT: Well, who would: decide that?

"THE COURT: The Department of Motor Vehicles.

"THE DEFENDANT: Oh, I see.

"THE COURT: You have got three criteria to meet if you are going to get probationary driving. You have to

furnish proof of financial responsibility, you have to go to a doctor and have the doctor testify that you are emotionally able to drive and able to follow the rules of the road. And also that you take a defensive driving course. If you can follow those three conditions, you may get probationary driving.

"THE DEFENDANT: Which means I can drive to work?

"THE COURT: To drive to work, yes."

Defendant made it clear to the trial court that he had not received notice of the nature of the proceedings against him:

"THE COURT: * * * Now, where is your driver's license?

"THE DEFENDANT: It's at home, I didn't drive here.

"THE COURT: Well, you have got to bring your license back.

"THE DEFENDANT: Well, my wife told me I could bring my license. My wife told me an officer was out to my house and had some papers for me; they wouldn't tell her nothing. And she said that the officer said, 'Be sure and tell him his license is suspended.'

"THE COURT: That's true.

"THE DEFENDANT: He said, 'Be sure you tell him to call the courthouse.' I called the courthouse and the courthouse said, 'We don't know what is going on.' I said, 'Well, I'll let it go.'

"THE COURT: When you say you called the courthouse, does someone here speak for the courthouse?

"THE DEFENDANT: I don't know, I'm just telling you what I was told. I don't want to argue with anybody. I'm telling the truth about what I heard.

"THE COURT: So what?

"THE DEFENDANT: So I'm telling you what I did. That's why."

The trial court then said:
"Your license is suspended. An order may be entered declaring him an habitual offender."

While acknowledging that defendant did not understand the reason for his appearance in court, the majority nevertheless concludes he has waived his right to raise procedural defects in the proceedings because he

failed to object in the trial court. In view of the overwhelming evidence that defendant did not understand the nature of the proceedings, not to mention his procedural and substantive rights, it is patently absurd to hold that he made a knowing waiver of his right to object to the failure of the state to comply with the notice requirements of ORS 484.715.

The majority rationalizes:

"The missing evidence in the present case is evidence that the state followed a procedural step prior to charging the defendant. The state is required to prove that it took that procedural step, but there could exist a variety of reasons for its failure to produce that evidence, including an agreement with defendant off the record that it was unnecessary to provide such evidence."

There is not a scintilla of evidence in this record to indicate that there had been any contact between defendant and the prosecutor prior to the hearing or that defendant was even aware of the procedural requirement of ORS 484.715. Thus, in this case, the suggestion that defendant had somehow waived that requirement is specious.

My conclusion is that defendant was denied fundamental fairness by the trial court. While the defendant may not have been entitled to a perfect trial, he was certainly entitled to a fair one. *Lutwak v. United States,* 344 US 604, 619, 73 S Ct 481, 97 L Ed 2d 593 (1953). He didn't get it. I regret that the majority decision by this court perpetuates that error.

Richardson, J., joins in this dissent.