(352 Or 666)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MARGARET ANNA REYNOLDS,
aka Margaret Anne Reynolds,
*Defendant-Appellant.*

Washington County Circuit Court
C081677CR, D065815M, D062475M;
A142472 (Control), A142474, A142475

280 P3d 1046

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Kristen G. Williams, Assistant Attorney General.

Before Haselton, Chief Judge, and Armstrong, Wollheim, Brewer, Schuman, Ortega, Sercombe, and Nakamoto, Judges.

SERCOMBE, J.

Schuman, J., concurring.

Haselton, C. J., concurring in part, dissenting in part.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for, among other offenses, two counts of assault in the third degree, ORS 163.165(1)(e).[1] She raises several assignments of error, none of which are preserved. We write only to address her first assignment of error and reject the others without discussion. In her first assignment, defendant argues that the trial court erred in failing to enter a judgment of acquittal on one of the third-degree assault charges. Defendant contends that there was no evidence on which to base that conviction. Thus, defendant requests that we review the error as one apparent on the record under ORAP 5.45(1).[2] The state concedes that "the evidence in this record does not appear to support the conviction at issue" but argues that we should not exercise our discretion to correct the error under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). We conclude that the error was plain and exercise our discretion to correct it.

We state the relevant facts, which are few, in a light most favorable to the state. *State v. Burgess*, 240 Or App 641, 643, 251 P3d 765 (2011). Defendant and Lemarroy stole money and drugs from the victim's apartment and fled the scene. The victim and his girlfriend, who discovered defendant and Lemarroy in the apartment during the commission of the crime, followed in hot pursuit. When the victim confronted the thieves, a fight broke out. The victim and Lemarroy, who had a knife, wrestled for control of the stolen property. Meanwhile, defendant and the victim's girlfriend fought nearby. Although the victim suffered multiple knife wounds, at no point during the melee did defendant inflict physical injury on the victim.[3]

---

[1] This is a consolidated appeal in which defendant also appeals judgments revoking her probation. However, defendant does not advance any assignment of error related to those judgments.

[2] ORAP 5.45(1) provides, in part:

"No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the record."

[3] When asked whether defendant had cut him, the victim testified, "She never assaulted me at all. * * * [My girlfriend] had her pretty much, you know, subdued."

Defendant was charged with numerous offenses for her involvement in those events. As relevant here, Count 13 of the indictment alleged that defendant committed third-degree assault against the victim, that is, that she "did unlawfully and knowingly cause physical injury to [the victim] while aided by another person actually present." The case was tried to a jury. After the state had rested its case, defendant moved for a judgment of acquittal but advanced no specific argument in support of the motion:

"[DEFENSE COUNSEL]: Your Honor, I would be making a motion for judgment of acquittal at this time. I'm not making any argument.

"THE COURT: Okay. Any nonargument to the non-argument that you want to make on the record?

"[PROSECUTOR]: No, thank you.

"THE COURT: Okay. I believe, in the light most favorable to the state, there is sufficient evidence to send all counts to the trier of fact, so that will be to the jury. So the motion is denied."

The jury ultimately convicted defendant of all charges.

Defendant now appeals, arguing that the trial court erred in failing to enter a judgment of acquittal on Count 13 because, at most, the evidence showed that she provided on-the-scene aid to another person (Lemarroy) who inflicted physical injury upon the victim. Defendant argues that, under *State v. Merida-Medina*, 221 Or App 614, 191 P3d 708 (2008), *rev den*, 345 Or 690 (2009), that evidence is insufficient as a matter of law to prove that she committed third-degree assault. She acknowledges that her argument is unpreserved but contends that the error is plain and that we should exercise our discretion to correct it. The state argues that we should not review defendant's claim of error in light of the purposes of preservation.

Generally, we will not consider an unpreserved issue on appeal. *State v. Wyatt*, 331 Or 335, 341, 15 P3d 22 (2000). Nonetheless, we may review an unpreserved assignment of error as one "apparent on the record" under ORAP 5.45(1) if certain conditions are met: (1) the error is one of law; (2) the error is "apparent," in that the "legal point is obvious, not

reasonably in dispute"; and (3) the error appears "on the face of the record," such that "[w]e need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Even where those conditions are satisfied, we must determine whether to exercise our discretion to reach the error and correct it. *Ailes*, 312 Or at 382.

The sufficiency of the evidence is a question of law, and we need not go outside the record or choose between competing inferences to resolve the issue in this case. *See, e.g., State v. Inloes*, 239 Or App 49, 243 P3d 862 (2010) (reviewing sufficiency of the evidence argument as plain error). There is no evidence in the record that defendant personally inflicted physical injury on the victim. Thus, the question is whether she can nonetheless be found liable—either directly or as an accomplice—for her conduct and, if not, whether that legal point is obvious.

In *State v. Pine*, 336 Or 194, 207, 82 P3d 130 (2003), the Supreme Court held that

> "the fact that a defendant provided on-the-scene aid to another person who inflicted physical injury upon a victim does not, in itself, render the defendant [directly] liable for third-degree assault * * *. Rather, such a defendant either must have inflicted physical injury directly himself or herself, or must have engaged in conduct so extensively intertwined with infliction of the injury that such conduct can be found to have produced the injury."

Subsequently, in *Merida-Medina*, we held that, "in an assault in which the assailant is aided by another person who is actually present," the aiding person cannot be found guilty of third-degree assault as an accomplice. 221 Or App at 616, 619-20. Those cases were both decided before trial in this case, and the legal points that they establish are not reasonably in dispute. Because defendant could not be held liable as an accomplice for third-degree assault, and because there was no evidence that her conduct was "so extensively intertwined with infliction of the injury" that she could be held directly liable, she was entitled to a judgment of acquittal on that third-degree assault charge. *Cf. State v. Nefstad*, 309 Or

523, 543, 789 P2d 1326 (1990), *cert den*, 516 US 1081 (1996) (restraining the victim while he was being stabbed constituted "personally" committing the homicide); *State ex rel Juv. Dept. v. K. C. W. R.*, 235 Or App 315, 230 P3d 973 (2010) (youth's conduct in attacking the victim while a third person struck the victim with a bat was so extensively intertwined with the infliction of the injury that youth could be held directly liable for third-degree assault). Thus, the trial court committed plain error in entering a judgment of conviction on Count 13.

The question remains whether we should exercise our discretion to correct the error. Among the considerations relevant to that determination are

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *."

*Ailes*, 312 Or at 382 n 6. Related considerations may include whether the defendant in some way encouraged the trial court to make the error; whether the defendant made a strategic choice not to object; and whether the error could have been remedied if raised below. *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007).

We have often declined to invoke plain error review where a defendant has failed to move for a judgment of acquittal, *Inloes*, 239 Or App at 54 (so noting), or where such a motion is unspecific as to its theory, *State v. Schodrow*, 187 Or App 224, 231 n 5, 66 P3d 547 (2003) (same). That is because the trial court has not, consistently with the purposes of preservation, been apprised of the issue and given an opportunity to avoid the error by allowing supplemental evidence to be introduced. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that the policy reasons underlying the rule of preservation are procedural fairness to the opposing parties, development of a full record to facilitate review, and promotion of judicial efficiency). The state contends that the same restraint should be exercised

when a defendant moves for, but does not argue in favor of, a judgment of acquittal.

Nonetheless, we conclude that there are sound reasons to correct the error in this case. First, the gravity of the error—an additional felony conviction based on insufficient evidence—is substantial. Defendant has a strong interest in having a criminal record that accurately reflects the nature and extent of her conduct. *State v. Valladares-Juarez*, 219 Or App 561, 564, 184 P3d 1131 (2008) (so noting in the context of a failure to merge convictions); *see also State v. Ryder*, 230 Or App 432, 435, 216 P3d 895 (2009) (imposition of additional felony conviction "strongly militates in favor of the exercise of discretion").

Indeed, the error—entry of a criminal conviction without sufficient proof—is of constitutional magnitude. As held by the United States Supreme Court in *Jackson v. Virginia*, 443 US 307, 316, 99 S Ct 2781, 61 L Ed 2d 560 (1979),

> "the due process guaranteed by the Fourteenth Amendment [mandates] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."

The seriousness of that error, the "onus of a criminal conviction," is not diminished by the fact that defendant will serve no additional time in prison, given that her sentence on the erroneous conviction will run concurrently with other sentences. We drew a similar conclusion in *State v. Gibson*, 183 Or App 25, 51 P3d 619 (2002), where we exercised *Ailes* discretion to address a plainly erroneous conviction. There, the defendant was convicted on a number of charges after agreeing with the state on guilty pleas to those crimes. The judgment, however, included a conviction on a charge to which the defendant had not pleaded guilty. The defendant did not object to that conviction during his sentencing hearing. We nevertheless reviewed the unpreserved claim of error, concluding that

> "[w]e choose to exercise our discretion to review the error, because convicting defendant of a crime to which he did not

plead guilty and of which a jury did not find him guilty violated defendant's due process rights. *See Jackson v. Virginia*, 433 US 307, 314, 99 S Ct 2781, 61 L Ed 2d 560 (1979) ('It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process.'). Although defendant may not gain any benefit in the form of a decrease in his overall term of incarceration and post-prison supervision, we review his first assignment of error in order to protect that constitutional right."

183 Or App at 33; *see also State v. Hathaway*, 207 Or App 716, 717-18, 143 P3d 545, *rev den*, 342 Or 254 (2006) (exercising discretion to correct merger error despite state's argument that the additional convictions had no effect on the defendant's term of imprisonment and noting that, "although the effects of merger are not always immediately apparent, they can be real and varied" (citation and internal quotation marks omitted)).

Second, correcting the error would not, on the whole, undermine the important policies behind the preservation rule, *i.e.*, "procedural fairness to the parties and the trial court, judicial economy, and full development of the record." *State v. Parkins*, 346 Or 333, 340, 211 P3d 262 (2009). "Ultimately, the preservation rule is a practical one, and close calls—like this one—inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *Id.* at 341.

The "particular record" in this case shows that the insufficiency of evidence could not have been cured by a contemporaneous objection. This is not a case where, if the error had been timely raised, the state could have reopened its case and corrected the deficiency in its proof. The victim testified unequivocally that defendant did not inflict physical injury on him ("She never assaulted me at all. * * * [My girlfriend] had her pretty much, you know, subdued."). *See State v. Matheson*, 220 Or App 397, 409, 186 P3d 309 (2008) (correcting plain error as to insufficiency of the evidence where, among other things, the victim's testimony made it "unlikely that the state would have been able to reopen the record and elicit additional testimony" to remedy the deficiency in proof and concluding that the state was not prejudiced by a lack of

preservation); *State v. Sweeney*, 188 Or App 255, 258-59, 71 P3d 168, *rev den*, 336 Or 146 (2003) (correcting plain error as to insufficiency of the evidence where, among other things, there was "no suggestion that the state could have introduced evidence" that would have remedied the deficiency in proof). Given the lack of any factual dispute on that point, it is unlikely that the record would have developed differently had defendant's argument been made. The state does not contend otherwise. Thus, consideration of the plainly erroneous conviction in this case would not undermine the policy interest in the "full development of the record."

Indeed, the irrefutable fact of defendant's lack of guilt distinguishes this case from the more common scenario of an unpreserved claim as to the sufficiency of the evidence—situations where the deficiency in proof is happenstance, where not all of the evidence that could be adduced was introduced into the record. That was the case in *State v. Hockersmith*, 181 Or App 554, 47 P3d 61 (2002), where we refused to review a defendant's conviction for possession of a controlled substance, alleged to be wrongful because drug testing reports had not formally been received into evidence. *See also Matheson*, 220 Or App at 407-08 (state could have reopened record if error were raised by the defendant); *State v. Caldwell*, 187 Or App 720, 726, 69 P3d 830 (2003), *rev den*, 336 Or 376 (2004) (state could have remedied defect in indictment if error were raised by the defendant). Allowing review in those rare cases where a defendant's innocence is established—as opposed to those where guilt is unproved—is consistent with the preservation principle that plain error review be exercised only in "rare and exceptional cases." *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (citation and internal quotation marks omitted).

In addition, we cannot fathom any reason why the state would have an interest in upholding the erroneous conviction. Defendant did not encourage the error, and she will not obtain a more advantageous result than if she had raised the error at trial. Thus, correcting the wrongful conviction would not result in unfairness to the adversarial party.

Furthermore, we can conceive of no *plausible* tactical reason for defendant's failure to make her argument

below. The dissent contends that defendant may have elected "to pursue a holistic 'all-or-nothing' strategy with respect to Count 13," so as to avoid drawing attention to "the availability and propriety of a conviction for fourth-degree assault." 250 Or App at 542 (Haselton, C. J., concurring in part, dissenting in part). Simply put, we do not think that that is a plausible strategic choice. The difference between those convictions is not insignificant—indeed, it is the difference between a felony and a misdemeanor conviction. ORS 163.160(2); ORS 163.165(2)(a). Under that circumstance, a trial counsel's decision—if indeed trial counsel consciously makes a decision—to forgo a motion for judgment of acquittal is not reasonable. Moreover, an "all-or-nothing" approach is as likely in this case as it is in any other where there are multiple charges or where a lesser-included offense exists; that is, under the dissent's theory, nearly every failure to move for a judgment of acquittal could be deemed a strategic choice. *See State v. Martino*, 245 Or App 594, 597, 263 P3d 1111 (2011) (rejecting state's "strategic choice" argument for similar reasons).

Admittedly, the preservation principle of "judicial efficiency" would not be served by review of defendant's unpreserved claim of error. Had defendant moved for a judgment of acquittal on the third-degree assault charge, that relief could have been obtained sooner and with less consumption of judicial resources. That inefficiency, however, is present in nearly all cases where review of unpreserved issues are under consideration. That consideration does not distinguish those cases where review should be allowed from those where it should not. We said as much in *State v. Morris*, 217 Or App 271, 274, 174 P3d 1127 (2007), *rev den*, 344 Or 671 (2008):

> "To be sure, as the state suggests, if defendant had raised his present objection before the trial court, error might well have been avoided. But that is true in many 'plain error' cases—indeed, in virtually all such cases except for those in which the claim of error is based on an intervening, post-judgment change in the law."

Thus, the error in this case is plain and serious, and its correction will not undermine the relevant principles that underlie the preservation rule. For the most part, the

dissent does not quibble with those conclusions. Chief Judge Haselton agrees that the error is plain and grave, so much so that the exercise of *Ailes* discretion is "presumptive." 250 Or App at 537 (Haselton, C. J., concurring in part, dissenting in part). Where the dissent parts company is in the next step of the analysis.

We conclude that the ends of justice in this case militate in favor of correcting the plain error. As the dissent notes, it is likely that defendant would be able to obtain post-conviction relief from the erroneous conviction. However, we conclude, contrary to the dissent, that the availability of post-conviction relief is a reason in support of affirmatively exercising our discretion. As we have noted in the plain error context before,

> "[w]e see no reason, and the state offers none, as to why [the] defendant should be made to jump through more procedural hoops before he can get the relief to which he is entitled. In this case, we are in a position to order the same relief to which [the] defendant would be entitled under a post-conviction proceeding, and we do so in the interests of judicial economy."

*State v. Cleveland*, 148 Or App 97, 100, 939 P2d 94, *rev den*, 325 Or 621 (1997). There is, in short, no reason to deny review where it would result in more unnecessary proceedings and, ultimately, less judicial efficiency.

Defendant concedes that the entry of a conviction on the lesser-included offense of fourth-degree assault is appropriate. The burden on the judicial system in amending the judgment and resentencing defendant is minimal. *See Ryder*, 230 Or App at 435 (citing the minimal burden on the judicial system as a reason to correct plain error); *see also State v. Donner*, 230 Or App 465, 469, 215 P3d 928 (2009) ("Given that our burden in reviewing and correcting the error is minimal and that sentencing defendant according to the law serves the ends of justice, we elect to exercise our discretion to correct the error here.").

Correction of the plain error on direct review, then, implements our mandate to administer justice "completely and without delay" under Article I, section 10, of the

Oregon Constitution.[4] The normal barriers to the complete administration of justice at the appellate level in the review of unpreserved claims of error—an incomplete record or procedural advantage or unfairness to either party—are not present. And postponing correction of an unjust conviction to another day, to the purview of a post-conviction relief or habeas corpus court, is delayed justice. Thus, those constitutionally mandated "ends of justice" strongly support the exercise of *Ailes* discretion in this case.

In sum, the reasons in favor of exercising our discretion to correct the plain error in this case outweigh any considerations militating against our review. *See Fults*, 343 Or at 523 (suggesting that exercise of discretion depends on a "weighing" of "the relevant factors"). Therefore, we conclude that correction of the error is warranted. *See, e.g., Matheson*, 220 Or App at 409 (exercising discretion to correct plain error as to sufficiency of the evidence where the defendant would not obtain a more advantageous result, it was unlikely that the state could have reopened the record, and the gravity of the error was substantial); *State v. Hurst*, 147 Or App 385, 936 P2d 396 (1997), *rev den*, 327 Or 521 (1998) (exercising discretion to correct an error apparent on the record where no evidence supported the conviction); *State v. Lindsey*, 45 Or App 607, 609 P2d 386 (1980) (same). As noted, defendant concedes that the entry of a conviction on the lesser-included offense of fourth-degree assault is appropriate. Accordingly, we reverse the conviction and remand to the trial court for entry of a judgment of conviction on the lesser-included offense of fourth-degree assault and for resentencing.

Conviction on Count 13 for assault in the third degree reversed and remanded for entry of judgment of conviction for assault in the fourth degree; remanded for resentencing; otherwise affirmed.

---

[4] Article I, section 10, provides that

"[n]o court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

**SCHUMAN, P. J.,** concurring.

Although I ultimately agree with the outcome that the majority reaches, there is much to admire in both the majority and dissenting opinions. Both attempt, not without success, to impose rationality on this court's treatment of unpreserved claims of error in some kinds of criminal cases. At the same time, however, I find that each opinion contains analyses and proceeds from premises with which I disagree. For several reasons, including its age and the fact that not all members of this court can participate in its resolution, this case is not an appropriate occasion for me to present my own fully developed treatment of preservation; therefore, I simply (and respectfully) concur.

Brewer, J., joins in this concurrence.

**HASELTON, C. J.,** concurring in part, dissenting in part.

For nearly 40 years, beginning with *State v. Willy*, 36 Or App 853, 585 P2d 762 (1978), our court has addressed—or declined to address and correct—unpreserved challenges to the sufficiency of evidence supporting criminal convictions. As with all other plain error decisions, our holdings have, ultimately, depended on our resolution of two subsidiary questions: (1) Did the trial court commit plain error by entering a conviction based on legally insufficient evidence, notwithstanding the absence of a motion for judgment of acquittal (MJOA) or its functional equivalent? And (2) if so, should we exercise our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991), to correct that error?

Our answers to those questions—which we have, not infrequently, conflated—have been diffuse and obtuse. Even allowing for case-specific circumstantial variability, our analysis, viewed collectively, has been inscrutable at best—and whimsical at worst.[1]

---

[1] And that is just in our published dispositions, without reference to those cases in which we have rejected such challenges and affirmed without opinion.

This case is the most recent of the genre. By that, I imply no criticism of the majority's analysis, which is considered and thoughtful, though I disagree with some of its particulars and ultimately dissent from the positive exercise of *Ailes* discretion. Rather, as the latest of this incorrigible genus, this case provides at least some opportunity to try to identify a few coherent and durable principles that may inform our approach going forward.

Toward that end, I write separately. Consistently with the principles posited below, I conclude that (1) in this case, the entry of a judgment of conviction on Count 13 did constitute plain error, but (2) in the totality of the circumstances here, the exercise of *Ailes* discretion is unwarranted—and, in fact, constitutes an abuse of that discretion. Accordingly, I dissent from the majority's disposition as to Count 13 but concur in the affirmance of defendant's other convictions.

Before turning to putative principles and their application, a quick "deck-clearing" observation: There was no legally cognizable MJOA here. To be sure, defendant's counsel uttered the term, but a "motion for judgment of acquittal" proffered generically and expressly without "any argument," much less without any differentiation among 14 counts involving multiple victims and distinct criminal conduct, is a nonmotion. It is meaningless and, ultimately, an abdication of counsel's obligation to identify for the court's consideration purported deficiencies—that is, legal insufficiency—of the state's proof as to particular elements of particular charges. *See, e.g., State v. Paragon*, 195 Or App 265, 268, 97 P3d 691 (2004) ("A motion for judgment of acquittal does not automatically encompass a challenge to the sufficiency of the evidence. The motion must state the specific theory on which the state's proof was insufficient."). For purposes of our present consideration, such a "motion" preserved nothing—and is immaterial to the proper exercise of *Ailes* discretion.

Thus, given that posture, this case is no different from any other plain error case—that is, a case in which the appellant seeks to have us correct a trial court's action (or inaction) notwithstanding the failure to raise that matter, in

any cogent fashion, before the trial court. That is the essential construct of any plain error challenge, including, as here, challenges based on the purported legal insufficiency of evidence to support a criminal conviction notwithstanding the defendant's failure to make an MJOA or functional equivalent before the trial court. And, as with any other invocation of plain error review, our analysis and disposition depends on two cumulative inquiries: (1) Did the challenged judicial action or inaction constitute an "error of law apparent on the record," ORAP 5.45(1), under the classic formulation prescribed in *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990)? And (2) if so, should the court exercise its discretion under *Ailes* to correct that error?

A.   *"Plain error"?*

So much for abstract methodology. The devil is in the details, jurisprudential and prudential. And the first of those bedeviling details with respect to unpreserved challenges to the sufficiency of evidence supporting criminal convictions pertains to the first, "Was it plain error?" question—and, specifically, to the proper characterization of the purported error.

Frequently, the asserted error is cast as "the trial court erred in failing *sua sponte* to enter a judgment of acquittal." *See, e.g., State v. Hockersmith*, 181 Or App 554, 556, 47 P3d 61 (2002); *see also State v. Ford*, 245 Or App 500, 501, 263 P3d 1110 (2011) (the defendant asserted that "the trial court erred in failing to grant a motion for judgment of acquittal * * * *sua sponte*"); *Willy*, 36 Or App at 856 (addressing assignment of error relating to "the trial court's failure to give a verdict for defendant, *sua sponte*"). That is, the "error" addressed in some of our cases has been cast in terms of the trial court *failing to grant* relief that was never requested. In other cases, criminal defendant appellants have, apparently, phrased their challenges more broadly (or less precisely) as simply pertaining to the insufficiency of evidence to support the conviction—that is, at least implicitly, that the trial court erred in *entering the judgment of conviction. See, e.g., State v. Hurst*, 147 Or App 385, 936 P2d 396 (1997), *rev den*, 327 Or 521 (1998); *State v. Lindsey*, 45 Or App 607, 609 P2d 386 (1980).

The distinction transcends form. Consistently with deference to the dynamics of the adversarial system, the universe of circumstances in which a trial court is compelled to act, in the absence of a motion or objection by a party, is extremely limited.[2] *See, e.g., State v. Milbradt*, 305 Or 621, 625, 630, 756 P2d 620 (1988) (directing trial courts, with respect to certain testimony tantamount to a "comment on the credibility" of another witness, to *"sua sponte * * * summarily cut off the inquiry before a jury is contaminated by it"); *see also State v. Lowell*, 249 Or App 364, 277 P3d 588 (2012) (reversing criminal conviction based on trial court's plain error in failing to preclude testimony *sua sponte* in accordance with *Milbradt*). At least—at the very least—in the context of a jury trial, it is a highly debatable proposition that the court is obligated to direct acquittal in the absence of a predicate motion. Indeed, in *Ford*, where the defendant, for the first time on appeal, argued that a conviction based on a purportedly uncorroborated confession must be reversed, we held that "[t]he trial court had no duty to rule, *sua sponte*, on the sufficiency of the state's evidence." 245 Or App at 501.

Conversely, casting and viewing the purported error in terms of the court's action in entering the judgment of conviction more comfortably comports with our treatment of other species of plain error, including, most consistently, sentencing error, in which we have held that, even in the absence of an objection, a trial court exceeded its authority in undertaking a particular act. *See, e.g., State v. Gutierrez*, 243 Or App 285, 259 P3d 951 (2011) (reversing, as plain error, court's imposition of sentence that exceeded statutory maximum); *State v. Ryder*, 230 Or App 432, 216 P3d 895 (2009) (court committed plain error in entering multiple convictions on counts that should have been merged). Bluntly: If a trial

---

[2] That otherwise constricted universe can be, and has been, existentially expanded by our application of *State v. Jury*, 185 Or App 132, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003), by which the temporal benchmark for determination of plain error is by reference to the law existing as of the time the appeal is decided, and not as of the time of trial. *See, e.g., State v. Inloes*, 239 Or App 49, 243 P3d 862 (2010) (reviewing unpreserved contention as to purported insufficiency of evidence to support criminal conviction by reference to appellate decisions that issued after the date of trial and conviction); *State v. Merrimon*, 234 Or App 515, 522, 228 P3d 666 (2010) (holding that admission of evidence of diagnosis of child sex abuse constituted plain error in the light of *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), which issued after the date of the defendant's conviction).

court commits plain error by imposing a sentence exceeding the statutorily prescribed maximum, why isn't it similarly erroneous for a court to enter a judgment of conviction based on legally insufficient evidence?

Either of the contending formulations of the predicate error is imperfect, but the latter most closely corresponds to the essential concern, *viz.*, that the defendant has been wrongly convicted of, and sentenced for, a crime. The inquiry focuses not on whether the trial court erred in failing to act *sua sponte* but, instead, on whether the action that the court *did* undertake was plainly contrary to law.

With the first, "Was it plain error?" question so focused, the answer is straightforward: In every case in which, viewing the evidence and disputed inferences in the light most favorable to the state, the legal insufficiency of the state's proof is "not reasonably in dispute," *Brown*, 310 Or at 355, the entry of the judgment of conviction is plain error. The critical qualification is, of course—as it is in many plain error cases—the "not reasonably in dispute" requirement. To satisfy that requirement, the appellant must, in turn, demonstrate *both* that (1) the operative legal principles governing sufficiency of the evidence as to the pertinent element(s) of the crime are "obvious," *id.*; *and* (2) it is beyond reasonable dispute that, applying those "obvious" legal principles to the evidence adduced at trial, that proof was legally insufficient.

The touchstone is not whether, as a substantive/merits matter, the appellant's position as to the law and its proper application is correct; rather, it is whether that position is correct beyond reasonable dispute. Thus—to invoke a quintessentially contentious issue of criminal proof—it could well be that a *preserved* challenge as to the sufficiency of proof based on the multiplicity or strength of inferences could result in a reversal, but an *unpreserved* challenge on the same grounds would be unavailing because the asserted legal insufficiency was "reasonably in dispute." *Id.*

Such concerns are inapposite to this case. For purposes of our review, the circumstances of defendant's conviction for third-degree assault on Count 13 are undisputed. The applicable law, as announced in *State v. Merida-Medina*, 221 Or App 614, 191 P3d 708 (2008), *rev den*, 345 Or 690 (2009),

is precise. And the proper application of the latter to the former is straightforward—almost arithmetical in its simplicity. The legal insufficiency of the proof on which the challenged conviction was based is patent.[3]

## B.   *A digression to discretion*

Before turning to *Ailes* discretion, a pause for some historical perspective—a sort of *entr'acte*—is in order. That is so because of the convolutions of our treatment of discretion, including some apparent conflation of the "plain error" and "exercise of discretion" determinations.

It all began with *Willy*, where the defendant raised an unpreserved challenge to the sufficiency of evidence underlying a conviction for unlawfully obtaining food stamps. 36 Or App at 856-57. We noted that we "normally [would] not take cognizance of matters not called to the attention of the trial court," but, nevertheless, "[b]ecause * * * the allegation is that there was absolutely no evidence from which the defendant could have been convicted," we "consider[ed] the issue" and rejected it because the record did, in fact, include evidence that the defendant had unlawfully obtained food stamps. *Id.* In so holding, we made no reference to discretion—or even, for that matter, to "plain error" (or its requisite characteristics)—which is unsurprising because *Willy* antedated *Brown* by 12 years and *Ailes* by 13.

The first reference to "discretion" in this context appears in *Lindsey*, which we decided two years after *Willy*. There, the defendant, who was convicted of fourth-degree assault after a trial to the court, appealed, asserting that "there was no evidence to support that conviction." 45 Or App at 609. Specifically, the defendant contended—and the state conceded—that "the only injury the victim suffered was a

---

[3] The state acknowledges as much—while at the same time vehemently contending that the court should not exercise its *Ailes* discretion to correct the error.

The state's "concession" as to plain error is largely—and perhaps entirely—immaterial. Each of the three cumulative *Brown* requisites is objective. Consequently, as a matter of law, the asserted error either satisfies those objective requisites or it doesn't, and the state's ostensible concession cannot alter our obligation under *Brown* to render that legal determination correctly. *But cf. Inloes*, 239 Or App at 53 (noting state's concession that insufficiency of evidence was no longer in reasonable dispute).

torn shirt." *Id.* We reversed. In so holding, we referred to *Willy* and cautioned:

> "*Willy* should not be read as establishing any general rule that we will *always* consider challenges to the sufficiency of the evidence when such challenges were not raised in the trial court. The rule is that we may consider such assignments in our discretion. *Willy* was a case in which we exercised that discretion."

45 Or App at 609 n 1 (emphasis in original).

Thus, in *Lindsey*, we phrased and framed the exercise of discretion as pertaining to our "consider[ation]" of the unpreserved challenge, but we did not identify any principles informing or constraining that discretion. *See also State v. Dennison*, 55 Or App 939, 944, 640 P2d 669, *rev den*, 293 Or 104 (1982) (characterizing *Lindsey* as having been "decided on the theory that a defendant ought not be convicted if there [is] no evidence of the substantive elements of the offense" and further describing *Lindsey* and *Willy* as "represent[ing] a very narrow exception to a general rule" of preservation).

In *State v. Wagner*, 67 Or App 75, 77, 676 P2d 937 (1984), the defendant contended, for the first time on appeal, that his conviction for witness tampering must be reversed because "there was no evidence that [the putative witnesses] had been legally summoned to an official proceeding at the time [the defendant] allegedly induced them to leave." Invoking *Lindsey* and *Willy*—and notwithstanding the state's nonpreservation objection—we reversed, observing that, where "there [is] absolutely no evidence to support [a] conviction, we will *usually* exercise our discretion to consider that issue." *Id.* (emphasis added). Again—at that point seven years before *Brown*—we referred only to "discretion to consider" the purported error, and the only consideration that we identified as bearing on that discretion was whether "there was absolutely no evidence to support" the challenged conviction.[4] *Id.* Thus, it appears that, in the pre-*Brown*/*Ailes* age, we embraced an

---

[4] None of our post-*Willy* cases explains the meaning of "absolutely no evidence"—as opposed to "no evidence" or "legally insufficient evidence."

approach that, if a conviction was based on legally insufficient evidence, we would, regardless of nonpreservation, presumptively (albeit not necessarily) correct that error and reverse the conviction.

We entered the *Brown/Ailes* era with *Hurst*. There, the defendant, who had been convicted for unlawful possession of a short-barreled shotgun, raised an unpreserved challenge, contending that the state had failed to prove that the rifle she possessed was not, in fact, registered as required under federal law.[5] *Hurst*, 147 Or App at 387. We reversed the conviction after determining, by reference to *Ailes*, that the error was "apparent." *Id.* We further stated that "we exercise[d] our discretion to review it"—but offered no explanation or justification for the positive exercise of *Ailes* discretion. *Id.*

Our most recent reference to *Willy*—until today—was in *Hockersmith*, where we declined to review the defendant's unpreserved contention that his conviction for possession of a controlled substance must be reversed because certain documents evincing the nature of the substance had, inadvertently, never been received into evidence. In so holding, we observed:

> "[D]efendant does not contend that the error is one of law apparent on the face of the record. Even assuming that it is, however, he offers no justification for exercising our discretion to consider it. Particularly in light of the fact that defendant stipulated to the facts contained in the police report and the laboratory reports, was shown them at trial, and then stood idly by as the trial court ruled without formally admitting them into evidence, we are not inclined to address his complaints about the failure to admit those reports for the first time on appeal."

181 Or App at 558.

---

[5] That contention was, in turn, based on *State v. Vasquez-Rubio*, 323 Or 275, 917 P2d 494 (1996), which was decided after the defendant's trial and conviction. Thus, *Hurst* effectively anticipated *Jury* and *Inloes* in that we assessed the sufficiency of the state's proof by reference to the standards prescribed in decisions that issued after the defendant's trial.

Thus, our refusal to exercise *Ailes* discretion in *Hockersmith* turned on the consideration that, if the deficiency in the proof had been raised by way of a timely MJOA, the trial court would (almost certainly) have permitted the state to reopen to remedy that deficiency and the necessary proof would readily have been adduced. To permit the defendant in *Hockersmith* to prevail on his unpreserved claim of error and, thus, obtain an outright reversal of his conviction, would have placed him in a better position than if trial counsel had timely raised the purported error. *Accord State v. Caldwell*, 187 Or App 720, 726, 69 P3d 830 (2003), *rev den*, 336 Or 376 (2004) (declining to remedy alleged "plain error" defect in indictment because, given that the statute of limitations had run during the pendency of the appeal, the defendant would secure an outright reversal, rather than a remand—which would, effectively, "reward defendant for not making a timely challenge at trial").

Finally, and most recently, in *State v. Inloes*, 239 Or App 49, 243 P3d 862 (2010), we addressed the application of *Ailes*'s discretionary criteria, where the belated challenge to the sufficiency of evidence underlying the defendant's conviction for criminal mistreatment was predicated on a post-trial change in decisional law, *viz.*, *State v. Baker-Krofft*, 348 Or 655, 239 P3d 226 (2010). We predicated our exercise of discretion on two considerations:

> "First, given the intervening material change in the law, correcting the asserted error here will not subvert the judicial system's interest in requiring preservation of error. Second, the gravity of the error—the imposition of four felony convictions based on legally insufficient evidence—is extreme."

*Inloes*, 239 Or App at 54-55 (internal quotation marks and citations omitted).

In sum, to paraphrase *Ecclesiastes*, "Better is the end of [the] thing than the beginning." But not much. For nearly 40 years we have referred to our "discretion" to review and correct unpreserved error of this sort—but, in doing so, we have variously conflated or equated the clarity of the error (*e.g.*, "absolutely no evidence") with the appropriate exercise of discretion, exercised discretion without any explanation

(even as prescribed in *Ailes*, 312 Or at 382), or attempted to explain the exercise or nonexercise of discretion by reference to some of *Ailes*'s nonexclusive criteria or to criteria developed and applied in other plain error contexts. *See, e.g., Inloes*, 239 Or App 49; *Hockersmith*, 181 Or App 554.

To be sure, some case-specific variability is inevitable and, indeed, desirable. And, given the mix-and-match interplay of various *Ailes* discretionary considerations, *see Ailes*, 312 Or at 382 n 6, precision is a fool's errand. It is, after all, *discretion*. But still, in the end, the judicious exercise of discretion must be cabined and guided by some consistent prudential principles.

C. *Deconstructing discretion*

Toward that end, I respectfully submit that several salient principles, which comport with our diffuse precedents, can and should inform and channel our exercise of *Ailes* discretion with respect to consideration of criminal convictions based on legally insufficient evidence.

*First*, the exercise of *Ailes* discretion in such circumstances is presumptive. That premise harkens to some of our pre-*Ailes* opinions, *e.g.*, *Wagner*, 67 Or App at 77 ("[W]e will usually exercise our discretion to consider that issue."), and partakes of notions of fundamental fairness. In general, in the absence of compelling countervailing considerations, affirming a criminal conviction based on insufficient evidence is unjust.

*Second*, that presumption is not absolute or conclusive. Given *Ailes*, it cannot be. *Ailes* emphasizes, and subsequent Supreme Court decisions have reiterated, that plain error review and correction is a "rare and exceptional" deviation from the rule of preservation. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (internal quotation marks omitted). That premise is grounded in the recognition that the rule of preservation promotes not only systemic "efficiency" but also, and far more importantly, the principled and even-handed operation of our adversarial system of justice. That is, the rule of preservation is not some mere mindless dictate of form over substance; rather, it is itself designed to promote fairness. *See, e.g.*, *Peeples v. Lampert*, 345 Or 209, 220, 191

P3d 637 (2008) (describing rationale for preservation requirements). That, in turn, necessitates an explicit explanation of why, in the totality of material circumstances, such an extraordinary departure from the rule is warranted. *Ailes*, 312 Or at 382. *Ailes* discretion is not a "one size fits all" proposition.

*Third*, consistently with the second principle, considerations bearing materially on our exercise of discretion in cases of this type should include the following:

(1) *"The ends of justice in the particular case."* This is, of course, a quintessential *Ailes* criterion, 312 Or at 382 n 6, and is almost reflexively dovetailed with the "gravity of the error" consideration. *See, e.g., Merrimon*, 234 Or App at 522; *State v. Lovern*, 234 Or App 502, 513-14, 228 P3d 688 (2010). In this context, the latter is, effectively, a makeweight, in that it is captured and effectuated in the first, presumptive principle above. That is, entering a criminal conviction based on legally insufficient evidence *is* an extremely serious error, and that is so regardless of the nature of the underlying charge. At first blush, the same might seem to be true of the "ends of justice" consideration—that is, that it can never comport with the ends of justice to fail to reverse a conviction based on legally insufficient evidence—and, thus, that consideration is already given effect by the initial presumption.

That, however, is not always true—in some circumstances, as a practical matter, the "ends of justice" may not militate in favor of overriding the rule of preservation. In particular, our "ends of justice" assessment should be informed by: (a) consideration of the functional role of the defendant's challenged conviction and sentence in the totality of his or her circumstances (including other convictions and sentences); and (b) the availability of other mechanisms (*e.g.*, post-conviction relief) to address and remedy the asserted error.

With respect to the first inquiry, the classic "ends of justice" scenario is one in which a defendant has been erroneously convicted of a single, very serious crime and is incarcerated even as we review the claim of the plain error. In that

circumstance, every day we delay plain error review and correction is another day of unjust confinement. But not every case is so stark; indeed, few are. Consider, for example, a case in which a defendant has been convicted on over a dozen criminal counts, many more serious than the single count that was based on insufficient evidence—and the sentence on that count is much shorter than, and concurrent with, those on his or her myriad unchallenged convictions. The "ends of justice" assessment in the two cases is qualitatively different.

So too with respect to the potential availability of collateral relief—which, after all, is designed to (ultimately) achieve the ends of justice. Presumably, in virtually every case in which counsel, without reasonable explanation, has failed to move for a judgment of acquittal whose allowance would have been required under law existing as of the time of trial, the wrongly convicted defendant will be able to obtain post-conviction relief, reversing the conviction.[6] The question, practically, becomes whether the error should be remedied by plain error review on direct appeal or left to post-conviction correction—that is, whether to act sooner rather than later. In the first scenario outlined above, the answer is clear. But it is not so clear with respect to the second, in which the defendant is suffering no present detriment from the purported wrongful conviction—and, in fact, may not suffer cognizable prejudice from that conviction for years (if ever), by which time any collateral proceedings will long be concluded. In the latter scenario, the ends of justice will not, in any real sense, be subverted by the court declining plain error review and correction and consigning the defendant to collateral proceedings—and the prudential policies underlying the rule of preservation may well be concomitantly served.

(2) *Post-trial developments in law pertaining to proof of the disputed offense.* This *State v. Jury*-based consideration can have cross-cutting implications with respect to the application of *Ailes* discretion. On one hand, in many

---

[6] One exception, addressed below, *see* 250 Or App at 540 (Haselton, C. J., dissenting in part, concurring in part), is where, if a timely MJOA had been made, the trial court would likely, and properly, have permitted the state to rectify the defect in its proof. *See, e.g., Hockersmith*, 181 Or App at 558.

cases, trial counsel cannot be faulted for failing to have anticipated the change of law—and, even if counsel had, the MJOA would have been denied under then-extant law—and, thus, plain error review will not subvert policies underlying the rule of preservation. *See, e.g., Inloes,* 239 Or App at 54. On the other hand, that is true only if we can be fully confident that the evidentiary record would not have been materially different if the subsequent developments in the law had been extant as of the time of trial. Otherwise, the record-development policies of preservation will be subverted—with the consequence that the defendant, by securing an outright reversal, may have obtained a better result than if he or she had raised a contemporaneous challenge.

(3) *The potential record-development effect of a contemporaneous MJOA.* At the risk of reiteration and overlap with the preceding discussion, which pertained to *Jury*-predicated challenges, this consideration applies to our review of every unpreserved challenge to the legal insufficiency of evidence. That is so because of the patent potential for tactical sandbagging—or, in all events, the potential for contemporaneous cure. Because of the underlying potential for bait-and-switch manipulation yielding an outright reversal, *see, e.g., Hockersmith,* 181 Or App 554, this consideration can militate powerfully, indeed, decisively, against the exercise of *Ailes* discretion in this context. Nevertheless, its application is, not infrequently, unsatisfying because of the constraints of the record on appeal: In their briefing on *Ailes* discretion, even the most skilled advocates are reduced to hypothesizing about what proof might (or might not) have been adduced if a timely MJOA had been made (and if the trial court had permitted reopening)—and we, as the referees and judges of that shadowboxing contest, are regularly reduced to rendering what amounts to a "we know it when we see it" determination as to what would have occurred at trial if something that never occurred had occurred. Still, in the dynamics of *Ailes* discretion, this, among the various considerations, comes closest to being a "tie goes to the runner" factor—with the state being the "runner," "safe" for now, unless or until the defendant can develop a fuller, more favorable record in the post-conviction proceedings as to putative prejudice.

## D. *Application and conclusion*

The application of the foregoing principles to this case is straightforward. Notwithstanding the generic presumption in criminal cases favoring the exercise of *Ailes* discretion when the evidence is insufficient, defendant's particular circumstances do not correspond with those in the generality of such cases. Further, nothing in the circumstances here suggests that this is such a "rare and exceptional case[ ]," *Gornick*, 340 Or at 166, as to warrant, much less compel, the extraordinary exercise of *Ailes* discretion.

The point of departure is the totality of defendant's convictions and consequent sentences. Defendant was convicted, after a jury trial, on 14 criminal counts, including six Class A felonies involving two different victims, four Class B felonies involving the same two victims, and four Class C felonies (including Count 13) involving the same two victims. The trial court (a) merged the guilty verdicts on the first two counts and imposed a 40-month sentence on the resulting conviction; (b) imposed a 90-month sentence on each of the other Class A felony convictions to be served concurrently with one another, with 80 months to be served consecutively to the 40-month sentence—*i.e.*, a total of 120 months' incarceration; (c) imposed 70-month sentences on each of the four Class B felony convictions, to be served concurrently with one another and with the sentences described in (b); and (d) imposed a dispositional upward departure sentence of six months with respect to each of the four Class B felony convictions, to be served concurrently with one another and with the sentences described in (b) and (c).

The upshot is that, regardless of the asserted plain error, defendant—like the defendant in the hypothetical posited above, *see* 250 Or App at 538-39 (Haselton, C. J., dissenting in part, concurring in part)—stands convicted of a very large number of felonies, many of which are much more serious than the challenged conviction, and her sentence on the challenged conviction is dwarfed by and subsumed within her sentences on the other, indisputably lawful convictions. Defendant identifies no meaningful collateral consequence from her conviction and sentence on Count 13—and, given the totality of the circumstances, none is manifest. The "ends

of justice" in this case hardly compel plain error correction on direct appeal.

Nor is this a case in which some subsequent, reasonably unforeseen change in the law mitigates or excuses the failure to make a contemporaneous MJOA. *Accord Inloes*, 239 Or App at 54-55 (addressing exercise of *Ailes* discretion in context in which substantive law changed between trial and appeal). Further, although this does not appear to be a case in which the *evidentiary* record might have developed differently if a timely MJOA had been made, it is at least plausible that defense counsel made a tactical choice to pursue a holistic "all-or-nothing" strategy with respect to Count 13, as he did with respect to all of the charges, and to forgo an MJOA predicated on *Merida-Medina*, which would have focused the court's (and the state's) attention on the availability and propriety of a conviction for fourth-degree assault. Of course, that *is* speculative—but it is also plausible. And on this record, pending any further elucidation in collateral proceedings, that, too, cuts against the exercise of *Ailes* discretion.

In the end, nothing in this case justifies the exercise of *Ailes* discretion. Accordingly, the majority's disposition as to Count 13 represents an abuse of that discretion. I respectfully dissent from that disposition and concur in the balance of the majority's disposition.